538 So.2d 329 (1988)
Bobby Joe PINKNEY
v.
STATE of Mississippi.
No. DP-76.
Supreme Court of Mississippi.
December 14, 1988.
Rehearing Denied February 15, 1989.
*333 Isaac K. Byrd, Jr., James W. Craig, Byrd & Associates, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow and Felicia C. Adams, Sp. Asst. Attys. Gen., Ed Peters, Dist. Atty., Jackson, for appellee.
EN BANC:
SULLIVAN, Justice, for the Court:
Bobby Joe Pinkney was tried and convicted by the Circuit Court of Hinds County, Mississippi, for the capital murder of Tracey Thompkins Hickman. He was sentenced to death. From this conviction and sentence he appeals to this Court assigning multitudinous errors. We find no merit to any of his assignments and the conviction and sentence of death are affirmed.
On October 25, 1984, Betty Thompkins went to the home of her daughter, Tracey Thompkins Hickman. Her two grandchildren, Michael and Daniel, who were three and two respectively, let her into the house. Betty Thompkins was directed to the kitchen *334 where she found her daughter, Tracey, lying in a pool of blood  obviously dead.
On December 7, 1984, an indictment was filed in the Circuit Court of Hinds County, Mississippi, charging Bobby Joe Pinkney with the capital murder of Tracey Hickman. The indictment charged that the murder was committed during the course of a burglary of her dwelling.
Numerous pre-trial motions were filed. Among them were a Motion for Continuance, a Motion to Suppress Statement, a Motion for Funds to Hire an Investigator, and a Motion for Private Psychiatric Examination and Testing. On July 11, 1985, a hearing was held on the suppression motion and Officers J.W. Stevens and William Turcotte testified for the State, while Pinkney himself testified for the defense. William Turcotte, James Davis, and William Leach testified in rebuttal for the prosecution. The trial judge denied the Motion to Suppress. He also denied the Motion for Continuance and Motion for Funds to Hire an Investigator and the Motion for Private Psychiatric Examination and Testing.
On June 20 and 26, 1985, a special venire was drawn. From the lengthy voir dire of this special venire and the qualification and selection of the jury numerous assignments of error have arisen.
At trial, Betty Thompkins, mother of Tracey T. Hickman, testified that on October 25, 1984, she went to her daughter's home. As Thompkins turned off of Highway 27 onto Burkes Road, she saw her daughter's car parked on the side of the road. She parked behind her daughter's vehicle and walked to Tracey's house. Her grandchildren let her into the house and directed her to the kitchen where she saw Tracey lying dead on the kitchen floor. Thompkins testified about the damage to the house and several photographs of the house and the scene were admitted into evidence.
During cross-examination, Thompkins testified that Tracey and her husband, Gary Hickman, had been separated for approximately three months at the time of Tracey's death. Thompkins also testified that an artificial plant, which had been on top of the wood burning heater, was missing from her daughter's home on October 25, 1984.
Hinds County Deputy Steve Bailey testified that he arrived at the Hickman home at about 1:55 p.m. on October 25, 1984, and took photographs of the house and the broken window in the dining room. Bailey stated there was dirt, which appeared to have come from a flower pot, in the den. A photograph of the kitchen and Tracey Hickman's body was admitted into evidence as were some photographs showing the bloodstains on the kitchen walls and floor.
Bailey testified that he had photographed some footprints outside the home and made a plaster of paris cast of one of these prints. Bailey also testified that he had taken photographs at the autopsy of Tracey T. Hickman and these photographs were admitted for identification. Through Bailey's testimony Tracey Hickman's clothing, and a nine pound wood splitting maul were also admitted for identification.
After the testimony of Bailey, in chambers Pinkney expressed his dissatisfaction with the all white jury which had been empaneled.
The prosecution next called Hinds County Deputy Gavin Davis who testified that he had interviewed Gary Hickman and Milton Blair. Davis discovered that a wood splitting maul, which belonged to Blair was missing from Hickman's shed. According to Davis, this maul was easily identified because it had a homemade hickory handle. Davis found the maul in Five Mile Creek and took possession of it.
Milton Blair testified for the prosecution that he often let Gary Hickman borrow tools and other items of personal property. According to Blair he had stored some of his tools in Hickman's shed and his wood splitting maul (which had been stored there) was missing. Blair identified the maul which had been found in Five Mile Creek as his.
Ozell Carson testified that at about 9:00 p.m. on October 24, 1984, Tracey Hickman's automobile broke down in front of his home. Carson was unable to siphon *335 any gas out of his truck for Hickman. Carson, his wife, and his stepson pushed Hickman's car out of the road so that it would not cause an accident. Carson then got two gallons of gasoline for Hickman from his brother.
Carson said that Bobby Joe Pinkney stopped at the scene and began talking to Tracey Hickman. After the conversation Pinkney left and later returned with David Richards, who worked on Hickman's car. The car cranked, died again, and was pushed down the highway to J.C. Carson's driveway. At this point Ozell Carson returned to his house.
Hinds County Investigator William Turcotte testified that on the afternoon of October 25, 1984, he went to the Hickman house on Cook Road and secured the scene and collected items of potential evidentiary value. According to Turcotte, Gavin Davis was looking for a wood splitting maul which was known to be missing from the Hickman residence.
On October 26, 1984, Turcotte attempted to find Pinkney. That afternoon Pinkney was picked up at his house by Officers Leach and Stevens. According to Turcotte, Leach and Stevens met Turcotte and Davis at the intersection of Old Highway # 3 and Highway # 27. Pinkney was with Leach and Stevens. Turcotte said that he carefully explained to Pinkney his Miranda rights and Pinkney admitted helping Tracey Hickman with her car at about 10:30 on the night of her death. Turcotte said that the officers then returned to Pinkney's house where Pinkney gave his written consent to a search of his car. Pinkney voluntarily produced a pair of work boots, the tread of which resembled the impression found at the Hickman house. The boots appeared to be splattered with blood. The boots were then identified and admitted into evidence.
According to Turcotte the floor mat of Pinkney's car contained what appeared to be a bloodstain and bone fragments. A piece of the floor mat was identified and admitted into evidence.
After the search of Pinkney's automobile, Pinkney was arrested. Turcotte again advised Pinkney of his Miranda rights and Pinkney confessed on the way to the sheriff's office. It is sufficient to note that through Turcotte's testimony a tape recorded confession was admitted into evidence. The transcript of this recording was admitted for identification and the tape was played for the jury. A signed confession was also admitted into evidence and read to the jury.
Joe Andrews, a forensic scientist with the Mississippi Crime Laboratory, testified that he compared hair samples found on the wood splitting maul with known samples from Tracey Hickman. Andrews testified that those samples could have had a common origin. Andrews explained that hair samples, unlike fingerprints, are not susceptible to precise identification and analysis.
Larry Turner, a forensic serologist with the Mississippi Crime Laboratory, testified that he analyzed stains from Pinkney's floor mat and the wood splitting maul and determined that the stains were human blood.
Dr. Rodrigo Galvez, a pathologist and psychiatrist, testified that on October 25, 1984, he performed the autopsy on the body of Tracey Hickman. Through Galvez' testimony the autopsy pictures were admitted into evidence.
Galvez said the body was badly bruised and the skull was like a "crushed eggshell." He further testified that in addition to the large cuts in Tracey Hickman's head, there were numerous smaller lacerations. The wound in the right side of the head was, according to Galvez, almost perfectly square. Three drawings which are Dr. Galvez' depictions of possible weapons were admitted into evidence.
According to Galvez, any of the three blows to the head could have caused death. Dr. Galvez testified that the bruises on the body were caused before death as a corpse will not bruise. Dr. Galvez said that since the blood had pooled under decedent's back and buttocks, she was lying on her back when she was killed. Dr. Galvez estimated the time of death to be approximately 9:30 *336 p.m., October 24, but allowed himself five hours leeway.
The State rested and defense counsel made an opening statement in which it was contended that Pinkney's confessions were involuntary and not to be believed.
David Richards testified for Pinkney that on October 24, 1984, he was at Lena Mae Hartfield's Cafe drinking beer when Bobby Joe Pinkney came in. Pinkney took Richards to fix the Hickman car. Richards testified that he could not keep the car cranked and that Bobby Joe Pinkney and Tracey Hickman drove off in Pinkney's car. Pinkney and Hickman returned approximately twenty minutes later and Richards and Pinkney got Hickman's car started and she drove away. Richards said that Pinkney took him home at about 12:00 o'clock midnight. Richards equivocated and finally admitted that it could have been as early as 11:30 p.m. when Pinkney dropped him off at home.
Deloris Craig, Pinkney's common law wife, testified that on October 24, 1984, Pinkney dropped her off at their house at about 10:00 o'clock p.m. and left. Pinkney returned between 12:30 and 1:00 o'clock a.m., ate supper and went to bed. Craig then produced some articles of clothing which she claimed had been worn by Pinkney on the night of October 24, 1984.
Pinkney himself testified that on October 24, 1984, he stopped at Ozell Carson's to help Tracy Hickman with her car. He then went to Lena Mae's Cafe and got David Richards to come work on Hickman's car. According to Pinkney, Hickman wanted him to take her to Utica. Pinkney said that they went to Caesar's Cafe where he bought some beer and cigarettes which Hickman had requested. On their way back, according to Pinkney, Hickman produced a marijuana cigarette which they smoked.
Pinkney claims that after David Richards attempted to get $50.00 for his efforts to fix the car, Hickman drove away with her children. Pinkney testified that he never saw Hickman again.
Pinkney claims he confessed because he was threatened at gunpoint and abused after the police picked him up at his house. Pinkney also claims that the Miranda rights were not given to him until after he had given his confession. On cross-examination Pinkney was unable to explain why his witnesses testified that he left David Richards' house at 12:00 o'clock midnight and did not get home until 12:30 or 1:00 o'clock a.m. Pinkney concedes that it would only take about five minutes to make the trip.
At the conclusion of the guilt phase the jury found Pinkney guilty of capital murder. At this point the defense made a proffer of a deposition of District Attorney Peters taken in a federal proceeding. This deposition deals with Peters' use of peremptory challenges to remove prospective black jurors in criminal cases. Also introduced was a newspaper article which quoted Peters as saying that the ideal juror is "a 45 year old white male with a crewcut and white socks who welds for a living." About black jurors in capital cases Peters is quoted as saying "Get rid of as many as you can." Peters did not deny the quotations.
After opening statements were made all the evidence from the guilt phase was adopted by the parties at the sentencing phase.
Turcotte again testified that he found the body of Tracy Hickman surrounded by a blood soaked circle in the carpet. Turcotte testified that the children had tracked blood on the kitchen floor and into Tracey Hickman's bed. Turcotte recounted his unsuccessful attempts to talk to the children and described their frightened condition. Turcotte testified that the crime scene was the bloodiest and goriest that he could ever remember.
Dr. Rodrigo Galvez testified again about Hickman's crushed skull and numerous lacerations. Dr. Galvez testified about the severe pain which would have been inflicted by the bruising blows found on Hickman's head and body. Over objection, Dr. Galvez was permitted to testify about the effect of the murder on the children who witnessed it  or at least its aftermath. A *337 photograph which shows a large hole in Tracy Hickman's head and a number of bruises was also admitted over objection. Galvez characterized the wounds on Tracy Hickman's body as the worst he had ever seen. The State rested.
Pinkney was informed of his right to address the jury and instructed not to argue the issue of guilt.
J.L. Brown, a Baptist Minister, was called by the defense and testified that he had known Pinkney since he taught him in junior high school. Brown said he had never had any trouble out of Pinkney and that he knew him personally to be a hard working, peaceful, and capable of being rehabilitated.
Lula M. Burks, Pinkney's first grade teacher, testified that, as a first grader, Pinkney was not a trouble maker and that while she did not know Pinkney well, she had never known him to be violent.
Walter Jackson, Pinkney's stepfather, testified that Pinkney "was a good boy coming up." According to Jackson, after quitting school Pinkney took a job and contributed to the support of the family. However, Jackson admitted having called Officer Leach to the house to tell Pinkney to move out but Jackson stills insisted that Pinkney was not a violent person. Bonnie Jackson, Pinkney's mother, testified that Pinkney was obedient and non-violent.
Joyce Reid, a co-worker of Pinkney's, testified that during the four years that she worked with him she found him to be courteous. She had never heard Pinkney curse and had never seen him act violently.
Henry King, another co-worker, testified that Pinkney was a good worker who never cursed.
After conferring for less than one hour the jury unanimously agreed that Bobby Joe Pinkney should suffer death. The trial judge sentenced Pinkney to death.

I.

THE TRIAL COURT ERRONEOUSLY PERMITTED THE STATE TO PRESENT TO THE JURY THE BACKGROUND OF THE DECEASED, AND THE EFFECT OF THE CRIME ON THE FAMILY OF THE DECEASED, BOTH THROUGH THE INTRODUCTION OF EVIDENCE AND IN OPENING AND CLOSING, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney contends that the district attorney used a "victim advocacy strategy" which this Court prohibited in Fuselier v. State, 468 So.2d 45, 52-53 (Miss. 1985). Pinkney also challenges this strategy on the basis of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), which held that a Maryland statute requiring a victim impact statement violated the Eighth and Fourteenth Amendments when such a statement was introduced into evidence during the sentencing phase of a capital murder trial. Specifically, Pinkney challenges the prosecutor's opening statement, the victim's mother's testimony during the guilt phase, Dr. Galvez' testimony during the sentencing phase, and the prosecutor's closing arguments.
During her opening statement the prosecutor made the following comments:
And at this point, ladies and gentlemen, comes the good part of my job  if you call it a good part  because this is when I begin to scratch the surface of asking you people for some justice for Betty Thompkins. I will ask you to return a verdict of guilty for the people of the State of Mississippi, but I am asking you to return a verdict of capital murder. Capital murder being murder in the commission of another felony, in this case, burglary. I'm not concerned with your ability to do that. I am not concerned one small bit. As I said, that will be when I scratch the surface of asking you to give that family some justice, because at that point we will bring you further evidence, evidence that no one should ever have to see. And I do not envy your responsibility. It is not a pretty sight. And at that point, after you have seen the heinousness, the atrociousness, *338 and the cruelty of what happened that night and you compare it with what you have heard from this defendant's mouth, then I will ask you to scratch a little further in the surface of bringing justice to this family. No one can every bring them complete justice. No one can every bring them Tracey back. No one can give those children their mother. No one can give Betty Thompkins her baby. But I will ask you to do your best to give her the justice that's available, not just because it's the oath that you took when you said you believed in the death penalty if we proved that it fit the crime; and it does. I will ask you to do so because it's the least we can do. Thank you.
No contemporaneous objection was made to the statement of the prosecutor and the prosecution therefore contends that this assignment is procedurally barred. See Cole v. State, 525 So.2d 365 (Miss. 1987).
The issue of procedural bar appears frequently in this record. In Williams v. State, 445 So.2d 798 (Miss. 1984), we said, "We have in death penalty cases the prerogative of relaxing out contemporaneous objection and plain error rules when the interest of justice so requires." Williams, 445 So.2d at 810. Citing Culberson v. State, 379 So.2d 499, 506 (Miss. 1980); Bell v. State, 360 So.2d 1206, 1215 (Miss. 1978). Because the death penalty is a different sort of punishment with more severe consequences than other sentences, this Court's scrutiny of such cases is correspondingly heightened. Williams, 445 So.2d at 810; see also, Laney v. State, 421 So.2d 1216, 1217 (Miss. 1982); Irving v. State, 361 So.2d 1360, 1363 (Miss. 1978). However, there are many instances in which this Court has invoked procedural bars against capital defendants. See Jones v. State, 517 So.2d 1295, 1310 (Miss. 1987); Booker v. State, 511 So.2d 1329 (Miss. 1987); Hill v. State, 432 So.2d 427 (Miss. 1983). Additionally, this Court has a statutory obligation to review death penalty cases to determine whether the sentence was imposed under the influence of arbitrary or extraneous influences. Section 99-19-105(3)(a), Mississippi Code Annotated (Supp. 1987). In capital cases, the procedural bar is sometimes relaxed because of the nature of the right asserted. See West v. State, 485 So.2d 681, 687-88 (Miss. 1985). Also, this Court has relaxed its procedural bar to consider serious, cumulative errors. See Williams v. State, 445 So.2d 798 (Miss. 1984). Even in capital cases procedural bars appear to be applied, based on a number of factors, on a case by case basis.
We find that this assignment of error is procedurally barred. Reviewing the assignment on its merits, however, we find that it is without merit. The conduct of the prosecutor in this case no way resembles Fuselier, in which the daughter of the victim was permitted to sit within the rail of the courtroom and confer with the district attorney throughout the trial. Nor does the statement by the prosecutor remotely resemble the introduction of statements to the jury as was done in Booth v. Maryland, supra. The prosecutor's comments do not require reversal of this conviction or sentence.
Under the same heading Pinkney next argues that Betty Thompkins, the mother of the deceased, impermissibly testified as to the background of her daughter and her reaction at finding her daughter's body the morning after the murder. No objection was made to this testimony and the prosecution again contends that the assignment is procedurally barred under the authority of Cole v. State, supra. The prosecution further argues that Thompkins' testimony was relevant and necessary as she was the witness who first saw the body. While this assignment is procedurally barred if we look beyond the bar to the merits of the assignment we find that no error was committed as Thompkins' testimony was necessary to establish the identity of the deceased, the ownership of the house, and the facts and circumstances surrounding her discovery of Tracey Hickman's body. This testimony was properly admitted.
The difficult issue under Booth arises out of the testimony of Dr. Galvez during the sentencing phase. The record reads, in pertinent part, as follows:

*339 Q. Dr. Galvez, what effect would this have on a young child who saw this type of crime?
A. I could quote you books after books and author after author who wrote extensively about this type of situation. A child about three or four years of age watching either mother or father being killed, especially in their very 
MR. STRIBLING:
Just a minute, now. I want to make an objection here. Unless he testified that he actually talked to and examined this child, we will object to any guesswork, or any opinion, medical opinion as to what this child may have thought.
THE COURT:
Well, he been qualified as an expert and I will allow him to testify within that framework. The objection will be overruled.
MR. PETERS:
Thank you.
Q. Go ahead, Dr. Galvez.
* * * * * *
She was gone, but the children will be alive and will remember the rest of their lives what they saw there for at least twelve hours they were with their mother.
Are you asking me what the consequence will be for the children?
Q. Yes.
A. I can guarantee you they will have emotional scars the rest of their lives.
The prosecution contends that this issue is procedurally barred as the proper objection was not made and that the testimony was permissible because it was "directly related to the circumstances surrounding the crime." Booth, 482 U.S. at 507, 107 S.Ct. at 2535, 96 L.Ed.2d at 457 (footnote 10).
In Booth v. Maryland, the U.S. Supreme Court addressed a Maryland statute which required that a formal Victim Impact Statement (VIS) be compiled and considered as evidence at a sentencing proceeding. Booth, 482 U.S. at 498, 107 S.Ct. at 2530, 96 L.Ed.2d at 446 (footnote 2). The VIS was compiled by the State Division of Parole and Probation from interviews from the victim's families. The VIS (which is appended to the majority opinion) contained comments about the void which resulted from the murders. Also, "... the VIS described the emotional and personal problems the family members have faced as a result of the crimes." Booth, 482 U.S. at 498, 107 S.Ct. at 2530, 96 L.Ed.2d at 446. The VIS was introduced into evidence over objection and on appeal it was held that the admission of this report was not error.
The U.S. Supreme Court granted certiorari to consider the Eighth Amendment issues raised by the VIS. In a five  four decision that Court held that the introduction of the VIS during a capital sentencing trial violated the Eighth Amendment. Writing for the majority, Justice Powell stated:
It is well-settled that a jury's discretion to impose the death sentence must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189 [96 S.Ct. 2909, 2932, 49 L.Ed.2d 859] (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); California v. Ramos, 463 U.S. 992, 999 [103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171] (1983). Although this Court normally will defer to a state legislature's determination of what factors are relevant to the sentencing decision, the Constitution places some limits on this discretion. See, e.g., id., at 1000-1001 [103 S.Ct. at 3452-53]. Specifically, we have said that a jury must make an "individualized determination" of whether the defendant in question should be executed, based on "the character of the individual and the circumstances of the crime." Zant v. Stephens, 462 U.S. 862, 879 [103 S.Ct. 2733, 2743, 77 L.Ed.2d 235] (1983) (emphasis in original). See also Eddings v. Oklahoma, 455 U.S. 104, 112 [102 S.Ct. 869, 875, 71 L.Ed.2d 1] (1982). And while this Court has never said that the defendant's record, characteristics, and the circumstances of the crime are the only permissible sentencing considerations, a state statute that requires consideration of other factors must be scrutinized to *340 ensure that the evidence has some bearing on the defendant's "personal responsibility and moral guilt." Enmund v. Florida, 458 U.S. 782, 801 [102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140] (1982). To do otherwise would create the risk that a death sentence will be based on considerations that are "constitutionally impermissible or totally irrelevant to the sentencing process." See Zant v. Stephens, supra, [462 U.S.], at 885 [103 S.Ct. at 2747].
Booth, 482 U.S. at 502-03, 107 S.Ct. at 2532-33, 96 L.Ed.2d at 448.
Further the court addressed the relationship between the "moral blameworthiness" of the defendant and the VIS:
The focus of a VIS, however, is not on the defendant, but on the character and reputation of the victim and the effect on his family. These factors may be wholly unrelated to the blameworthiness of a particular defendant. As our cases have shown, the defendant often will not know the victim, and therefore will have no knowledge about the existence or characteristics of the victim's family... .
It is true that in certain cases some of the information contained in a VIS will have been known to the defendant before he committed the offense. As we have recognized, a defendant's degree of knowledge of the probable consequences of his actions may increase his moral culpability in a constitutionally significant manner. See Tison v. Arizona, 481 U.S. 137, 157 [107 S.Ct. 1676, 1687, 95 L.Ed.2d 127] (1987). We nevertheless find that because of the nature of the information contained in a VIS, it creates an impermissible risk that the capital sentencing decision will be made in an arbitrary manner.
Booth, 482 U.S. at 504-05, 107 S.Ct. at 2533-35, 96 L.Ed.2d at 449-450.
The opinion in Booth may contain the seeds of its own destruction. The State relies primarily on a footnote which provides in part:
Our disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. Similar types of information may well be admissible because they relate directly to the circumstances of the crime. Facts about the victim and family also may be relevant in a non-capital criminal trial. Moreover, there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant. See, e.g., Fed.Rule Evid. 404(a)(2) . ..
482 U.S. at 507-08, 107 S.Ct. at 2535, 96 L.Ed.2d at 451 (Footnote 10).
The testimony of Dr. Galvez is not as egregious or voluminous as that contained in the VIS in Booth. Also the children's condition is much more closely related to the actual murder (they were there) than were the comments put forward in Booth. It should be noted that Booth had not been decided at the time Pinkney was tried and we cannot say that Pinkney's counsel should have been able to anticipate the Booth holding. However, Fuselier had been decided by this Court and more to the point, there existed at common law the basic rule of evidence on relevance. The relevance objection in this instance was obvious and was not made by defense counsel. It therefore was not error to allow this testimony at the sentencing phase by Dr. Galvez.
Addressing the closing arguments of the prosecution, Pinkney also argues that they violate Booth. Once again the prosecution relies upon procedural bar and further argues that the proper analysis is "whether the prosecutor's remarks denied the defendant a fundamentally fair trial." Lockett v. State (I), 517 So.2d 1317, 1333 (Miss. 1987).
In Lockett, this Court invoked a procedural bar on a similar assignment of error stating:
This Court on numerous occasions has refused to consider the issue of prosecutorial misconduct where the defendant did not raise it at trial and we so refuse to do so today. See, e.g., Dufour v. State, 483 So.2d 307, 311 (Miss. 1985); Billiot v. State, 478 So.2d 1043, 1045 *341 (Miss. 1985); In re Hill, 460 So.2d 792, 799 (Miss. 1984); Smith v. State, 434 So.2d 212, 216 (Miss. 1983); Read v. State, 430 So.2d 832, 836 (Miss. 1983). Alternatively reaching the merits, however, Lockett's claim fails. The question for this Court is whether the prosecutor's remarks denied the defendant a fundamentally fair trial. Stringer v. State, 500 So.2d 928, 939 (Miss. 1986); see also, United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1, 13 (1985); Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431, 438 (1974).
Lockett (I), 517 So.2d at 1333.
We are of the opinion that all of the assignments taken together do not merit reversal of the guilt phase or the sentencing phase. Under our holding in McFee v. State, 511 So.2d 130, 135 (Miss. 1987), these instances did not substantially impair the right of the defendant to a fair trial.

II.

THE LOWER COURT ERRED IN ADMITTING THE APPELLANT'S CONFESSIONS INTO EVIDENCE IN THAT SAME WERE OBTAINED IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FIFTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTIONS 26 AND 14 OF THE MISSISSIPPI CONSTITUTION.

A.

THE CONFESSIONS WERE OBTAINED IN VIOLATION OF THE APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION AND SECTION 26 OF THE MISSISSIPPI CONSTITUTION.
In this assignment Pinkney challenges the admissibility of his confession on Fifth and Sixth Amendment grounds. Pinkney's first contact with authorities occurred at about 3:30 p.m. on October 26, 1984. Pinkney was given Miranda warnings by Officer Leach and indicated that he understood them. Pinkney agreed to accompany the officers to David Richards' house. However, instead of going to David Richards' house, the officers stopped and waited for two investigators to catch up with them. These investigators were Officers Turcotte and Davis.
When Turcotte and Davis arrived, Turcotte again advised Pinkney of his Miranda rights and then took Pinkney to his own home where Pinkney signed a consent form to search his house and vehicle. Pinkney went into his house and returned with a pair of boots, which appeared to the officers to have blood on them. Turcotte and Davis also found what appeared to them to be blood and possibly bone or flesh fragments on the floor mat of Pinkney's car. Pinkney was then handcuffed and again advised of his rights. Davis and Turcotte told Pinkney on the way to Jackson that he would be charged with the murder of Hickman. Upon arriving at the detention center, Pinkney was given supper and allowed to eat by himself, go to the bathroom and wash his face. He was then once again advised of his rights in detail and signed a consent to speak form. Pinkney then gave a detailed confession, which was tape recorded. Only Turcotte, Davis, and Pinkney were present at the confession. The taped confession was taken on Friday night.
The following day (Saturday), Pinkney was again advised of his rights and signed another consent form. As the tape recorder would not work handwritten notes were taken. Afterward Pinkney signed the handwritten statement. On Monday, Pinkney was given a transcript of the tape recorded confession. He refused to sign this transcript and indicated that he wanted to talk to a lawyer. No further interrogations took place after Pinkney invoked his right to counsel.
At the suppression hearing, Pinkney made allegations of coercion, and claimed that he was forced to sign a blank consent to search form. He also contended that he was physically intimidated, instructed on the content of his confession, and threatened with the gas chamber. Turcotte, *342 Leach and Davis all testified and denied all of Pinkney's allegations.
Pinkney contends that his Sixth Amendment right to counsel was violated on the authority of Page v. State, 495 So.2d 436, 440 (Miss. 1986); and Cannady v. State, 455 So.2d 713 (Miss. 1984). The damaging confessions were made on the night of the arrest and the next day. The interplay between the Fifth and Sixth Amendment rights to counsel (and their state equivalents) was gone into in great detail in Cannady and Page. Pinkney's argument fails because the facts of this case clearly show that Pinkney waived both his Fifth and Sixth Amendment rights. Pinkney testified at length on this issue and his testimony is unconvincing.
The trial judge committed no error in declining to suppress the statements. The evidence simply does not support Pinkney's claim that these rights were not knowingly, intelligently, and voluntarily waived. The State complied with Agee v. State, 185 So.2d 671 (Miss. 1966), and met its burden under Cannady and Page.

B.

THE CONFESSIONS WERE OBTAINED IN VIOLATION OF PINKNEY'S RIGHT NOT TO GIVE EVIDENCE AGAINST HIMSELF SECURED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTIONS 26 AND 14 OF THE MISSISSIPPI CONSTITUTION.
Pinkney also challenges the voluntariness of his confession.
In Cabello v. State, 490 So.2d 852 (Miss. 1986), we addressed the admission of a confession and stated:
In order for a confession to be admitted into evidence, it must have been given freely and voluntarily, and without the influence of promises or threats. Frost v. State, 483 So.2d 1345 (Miss. 1986). A confession which in truth is not voluntary, which comes about as a result of threat, physical mistreatment, or the promise of reward, cannot be used either for the State's case in chief or for impeachment purposes. Powell v. State, 483 So.2d 363 (Miss. 1986).
"[W]here a criminal defendant challenges the voluntariness of a confession, he has a due process right to a reliable determination that the confession was in fact voluntarily given." Gavin v. State, 473 So.2d 952, 954 (Miss. 1985). See also, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).
In a hearing to determine the admissibility of a confession, the trial judge is the trier of fact and is charged with determining whether there has been, under the totality of the circumstances, a knowing and voluntary waiver of the accused's privilege against self-incrimination. Gavin v. State, 473 So.2d at 954. See also, Jones v. State, 461 So.2d 686, 696 (Miss. 1984); Depreo v. State, 407 So.2d 102, 106 (Miss. 1981). "[T]he State has the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt." Gavin, 473 So.2d at 954.
"Age and intelligence level factors to be considered in determining whether a waiver and a confession are free and voluntary, but are not controlling." Coleman v. State, 378 So.2d 640, 644 (Miss. 1979). See also, Saucier v. State, 328 So.2d 355 (Miss. 1976); Stewart v. State, 273 So.2d 167 (Miss. 1973).
Once the trial judge determines that a confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence. Frost v. State, 483 So.2d 1345 (Miss. 1986); Gavin v. State, 473 So.2d 952 (Miss. 1985).
Cabello v. State, 490 So.2d at 856. See also, White v. State, 495 So.2d 1346, 1347 (Miss. 1986).
Neither the trial judge nor the jury believed Pinkney's allegations of threats, trickery, violence, and false promises. There is substantial and credible evidence to support the trial judge's ruling on this issue. Since that ruling was not erroneous, *343 it will not be reversed. See Lockett v. State (I), 517 So.2d 1317 (Miss. 1987).

III.

THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR FUNDS TO OBTAIN EXPERT ASSISTANCE IN THIS CASE, THUS VIOLATING APPELLANT'S RIGHTS UNDER THE FOURTEENTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney specifically requested of the trial court an independent psychiatric evaluation, a private investigator, and a forensic expert.
Relying on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Pinkney argues that he should have provided with the funds to obtain independent evaluation by psychiatrists. No ruling was made on this motion and under such circumstances, the assignment of error would normally be procedurally barred. Billiot v. State, 454 So.2d 445 (Miss. 1984).
Addressing the merits of this assignment of error requires an analysis of Ake wherein the Supreme Court of the United States held in part that:
We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.
470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66.
Pinkney was examined by forensic psychiatrists and a forensic psychologist. They concluded that Pinkney was "probably responsible enough and competent enough to stand trial." Pinkney was sent to the Mississippi State Hospital at Whitfield for observation and examination on March 4, 1985, and was interviewed, tested and seen by a psychiatrist. A report was issued on March 26, 1985, which concluded that Pinkney was competent to stand trial. No mental disorder was detected and the report stated that Pinkney would be able to assist his attorney. Unlike Ake, Pinkney's sanity was not a "significant factor" at trial. In spite of this, Pinkney received all of the protection that Ake mandates. Pinkney was tested and examined by at least two psychiatrists as well as other specialists. There is no merit to this assignment of error.
Pinkney also argues that the denial of his motion for funds to hire a private investigator constitutes error. The argument seems to be that a private investigator would have been helpful. During the motion hearing defense counsel's testimony to that effect was unconvincing. Addressing a similar issue in Billiot v. State, 454 So.2d 445 (Miss. 1984), this Court stated:
In Bright v. State, 293 So.2d 818 (Miss. 1974), this Court held that the state was not required to furnish an indigent defendant expenses for an independent chemist and noted that the right to expert witnesses for defendant at the expense of the state has generally been denied. Id. at 822. In Davis v. State, 374 So.2d 1293 (Miss. 1979), we concluded that the denial of an indigent defendant's request for expenses to hire a handwriting expert violated neither the United States nor the Mississippi Constitution, and we further said that the determination of whether to provide an expert shall be made on a case by case basis:
We do not enter this field of inquiry to make the determination that the state owes to the indigent the duty of providing an expert as a part of due process *344 to which the defendant is entitled, for, as stated in the Watson case, supra, the decision should be on a case by case basis, and, unlike the Bradford case, supra, the guilt or innocence of the defendant was scarcely, if at all, dependent on the state's expert witness, and also for reasons next to be noticed.

Id. at 1297. And finally, in Bullock v. State, 391 So.2d 601 (Miss. 1980), this Court denied funds to employ a criminal investigator where,
The appellant did not outline any specific costs for such an investigator, and did not indicate to the court in any specific terms as to the purposes and value of such an individual to the defense.

Id. at 607. The purpose of the request for expenses to hire an investigator was to show the disposition of the community which ultimately was shown by other means. However, at no time did appellant outline any specific costs for the investigation. When we apply the case-by-case approach employed by Davis v. State, supra, to the facts on this record, we find that the denial by the trial court of reasonable expenses to conduct the investigation violated neither Billiot's constitutional nor statutory rights.
Billiot, 454 So.2d at 453-454.
See also, Johnson v. State, 476 So.2d 1195 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985).
Pinkney also mentions his motion to test evidence. A brown bag containing clothes and a towel was turned over to the Mississippi Crime Laboratory but was not tested. The motion alleged that the autopsy showed that the victim had engaged in sexual intercourse shortly before her death and an exculpatory matter might be gained from such testing. The trial judge granted this motion and entered an order directing the Mississippi Crime Laboratory to conduct hair, fiber, blood, fluid, and other tests on the items. This is the last mention of this evidence on the record.
The trial judge entered a discovery order and offered to review the prosecution's file in camera. The district attorney agreed to provide his entire file to defense counsel. It is puzzling that the alleged sexual intercourse was never mentioned in testimony, but there is no indication that any Rule 4.06 or Brady v. Maryland violation occurred. This assignment of error is without merit.

IV.

THE LOWER COURT ERRED IN GRANTING THE STATE'S CHALLENGES FOR CAUSE, AND IN FAILING TO GRANT THE DEFENSE CHALLENGES FOR CAUSE, VIOLATING THE APPELLANT'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION, AND SECTIONS 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Under this assignment Pinkney argues that the trial court erred in granting the prosecutor's "Whitherspoon" challenges. See Wainwright v. Witt, 469 U.S. 412-420, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); Whitherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Fuselier v. State, 468 So.2d 45, 53 (Miss. 1985). Pinkney specifically challenges the dismissal of jurors Armstrong, Cassell, Coleman, Crump, Emma Dixon, Rosie Dixon, Frazier, Gilmer, and Harris. Pinkney claims that Jurors Crump, Emma Dixon, and Frazier were rehabilitated during defense counsel's voir dire.
The prosecution addresses the dismissal of each juror with specificity. Juror Crump had formed an opinion. Juror Frazier twice said that she would never vote for the death penalty. Juror Dixon made inconsistent statements regarding her position on the death penalty. On the authority of Stringer v. State, 500 So.2d 928 (Miss. 1986), the trial judge committed no error in excusing those jurors whose position on the death penalty was not unmistakably clear.
In Stringer we addressed the death qualification of jurors and stated:

*345 In Fuselier v. State, 468 So.2d 45 (Miss. 1985), this Court recognized a recent pronouncement on this issue from the United States Supreme Court in Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Witt upheld the standard of Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and reiterated it, stating:
That standard is whether the juror's views would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' ... . This standard .. . does not require that a juror's bias be proved with unmistakable clarity ... . many veniremen simply cannot be asked enough questions to reach the point where their bias has been made `unmistakably clear.' ...

Witt, 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851-52.
Stringer v. State, 500 So.2d at 943; see also, Williamson v. State, 512 So.2d 868 (Miss. 1987).
In Williamson, supra, we upheld the dismissal of jurors who had given inconsistent answers with regard to their ability to return a death sentence. Williamson, 512 So.2d at 881.
None of the prosecutor's challenges for cause were erroneously granted. See Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).
Pinkney also alleges that the trial judge's failure to grant his challenges for cause on Jurors Askew, Barlow, Hammack, and Harrison denied him his right to an impartial jury under the Sixth and Fourteenth Amendments and Sections 26 and 14 of the Mississippi Constitution.
Askew, who works with Hinds County as an emergency specialist, received radio communications on the night in question and knew some of the State's witnesses.
Barlow was challenged because his brother is a jailer at the Hinds County Detention Center.
Hammack was challenged because he played softball with two of the State's witnesses. Harrison, who had taught two of the State's witnesses' children in Sunday School and whose son-in-law is a Hinds County Deputy was challenged for cause.
Hammack, Harrison, Askew and Barlow each testified unequivocally that they could sit as an impartial juror. None of these jurors knew the facts of this case.
In Mhoon v. State, 464 So.2d 77 (Miss. 1985), we addressed a case in which nearly one-third of the qualified venire persons were either policemen or were related to one who was or had been a policeman. Mhoon, 464 So.2d at 80. Mhoon explicitly rejects the notion that policemen and their relatives are per se unqualified to sit on a jury. Mhoon, 464 So.2d at 81. The teaching of Mhoon is that trial judges should scrupulously guard the impartiality of the jury and should take corrective measures to ensure that a jury does not disproportionately represent the law enforcement community. There is no evidence that the trial judge improperly rejected these challenges for cause on this record and this assignment of error is without merit.

V.

THE STATE'S USE OF JURY CHALLENGES HAD THE PURPOSE AND EFFECT OF EXCLUDING BLACK PERSONS FROM THE JURY, THUS VIOLATING THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION, AND MISSISSIPPI CODE ANNOTATED 13-5-2 (SUPP. 1986).

A.

THE USE OF PEREMPTORY STRIKES BY THE STATE TO ELIMINATE BLACK PERSONS FROM THE JURY VIOLATED THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION, AND MISSISSIPPI CODE ANNOTATED 13-5-2 (SUPP. 1986).
Here Pinkney sets out his Batson claim. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Griffith *346 v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
Pinkney was tried before the U.S. Supreme Court's decision in Batson was handed down. No objection was made to the prosecutor's use of ten peremptory challenges to get rid of all of the black jurors. The prosecutor articulated into the record his reasons for exercising each of these peremptory challenges. During the prosecution's case-in-chief in the guilt phase, Pinkney himself articulated his objection to the racial composition of the jury and expressed dissatisfaction with the all white jury.
At the conclusion of the guilt phase defense counsel proffered a deposition of the district attorney taken in a federal proceeding. Also a video tape of a televised debate/discussion between the district attorney and then Professor Robert McDuff was made a part of the record for appeal.
The district attorney's use of peremptory challenges against black jurors was formally raised at the motion for new trial.
The issue to be resolved is whether the assignment of error is procedurally barred by this Court's opinions in Thomas v. State, 517 So.2d 1285 (Miss. 1987), and Jones v. State, 517 So.2d 1295, 1310 (Miss. 1987). In Jones the majority addressed a similar claim and stated:
In the light of Thomas, we need not belabor the discussion. Rather we note that Thomas controls the present petition and we adhere to our case law affirming the necessity for trial objection to a Batson claim. We further hold that objection to be timely only where it is made prior to the empaneling of the jury. We see nothing in the record of Jones' trial to excuse his failure to object.
Jones, 517 So.2d at 1311. (On Petition for Rehearing).
In this case, according to Thomas, no timely objection was made. Under Thomas this assignment of error is procedurally barred. We are not unfamiliar with the arguments Pinkney advances against this procedural bar. See Thomas v. State, 517 So.2d at 1288-1295 (Robertson, J. dissenting). Under our ruling in Thomas v. State, supra, this assignment is procedurally barred. If we reach it on the merits the prosecution provided racially neutral reasons for each of the jurors challenged. There is no merit in this assignment.

B.

THE STATE'S USE OF JURY CHALLENGES FOR CAUSE, INDIVIDUALLY AND IN TANDEM WITH THE STATE'S PEREMPTORY STRIKES, HAD THE PURPOSE AND EFFECT OF EXCLUDING BLACK PERSONS FROM THE JURY, THUS VIOLATING THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION, AND MISSISSIPPI CODE ANNOTATED, SECTION 13-5-2 (SUPP. 1986).
Pinkney next advances the novel argument that the prosecutor's use of Whitherspoon challenges violates the principles set forth in Batson and Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880). Of the twenty available black venire persons ten were challenged for cause and the rest were peremptorily struck. Pinkney contends the use of Whitherspoon challenges to further the prosecutor's philosophy of getting rid of black jurors constitutes reversible error. This issue was also first raised on a motion for new trial.
Contending that the prosecution has a right to challenge for cause any jurors who are excludable under Whitherspoon and its progeny, the prosecution argues that no reversible error occurred. See Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Gray does not limit the number of Whitherspoon challenges and under Gray, the improper granting of a single Whitherspoon challenge is reversible error. See Gray, supra. The challenges for cause are to be examined under the Whitherspoon cases and peremptory challenges are to be examined under Batson. If each of the challenges are found to be constitutionally sound, then the combination is also sound. A successful Whitherspoon *347 challenge against a black juror is not relevant, because "... a defendant has no right to a petit jury composed in whole or in part of persons of his own race." Batson, 476 U.S. at 85, 106 S.Ct. at 1716, 90 L.Ed.2d at 80, quoting Strauder v. West Virginia, 100 U.S. 303, 305, 25 L.Ed. 664 (1879).
It should be noted that the same procedural bar analysis may be applied to this portion of Pinkney's argument as to his Batson claim. See Thomas v. State, supra. We are of the opinion that a proper Whitherspoon challenge for cause is a "racially neutral reason" under Batson and there is no merit to this assignment of error.

VI.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR CONTINUANCE, VIOLATING APPELLANT'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS AND SECTIONS 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Two weeks before the trial commenced, Pinkney filed a second motion for continuance. The trial judge heard defense counsel's testimony on this issue and then denied the motion.
Pinkney charges that the denial of this motion deprived him of his Sixth and Fourteenth Amendment rights to compulsory process of witnesses, Hicks v. Wainwright, 633 F.2d 1146 (5th Cir.1981), and his Fourteenth Amendment and Section 14 rights to due process. See Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The matter of a continuance is left to the sound discretion of the trial judge. Gates v. State, 484 So.2d 1002 (Miss. 1986).
We note that Pinkney does not (and did not) allege with any specificity the particular reasons why he should have been granted a continuance. Pursuant to Section 99-15-29, Mississippi Code Annotated (1972), and Gates, supra, "a denial of the continuance shall not be grounds for reversal unless the Supreme Court shall be satisfied that an injustice resulted therefrom." Section 99-15-29 (1972). See also, Billiot v. State, 454 So.2d 445, 454-455 (Miss. 1984).
From the evidence submitted at the pre-trial motion hearing and the evidence at the motion for new trial nothing appears to cause this Court to believe that the denial of the continuance caused Pinkney's trial to be fundamentally unfair. There was no abuse of discretion and no injustice resulted therefrom. Therefore, this assignment is without merit.

VII.

THE INTRODUCTION OF A SERIES OF PHOTOGRAPHS OF THE DECEASED WAS CUMULATIVE AND THE INFLAMMATORY IMPACT OF SAID PHOTOGRAPHS OUTWEIGHED THEIR PROBATIVE VALUE SO AS TO VIOLATE APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION, AND SAID VIOLATION WAS COMPOUNDED BY THE USE OF THE PHOTOGRAPHS IN CLOSING ARGUMENT AND BY THE FAILURE OF SENTENCING INSTRUCTION S-1 TO DEFINE THE AGGRAVATING CIRCUMSTANCES.
Pinkney challenges the introduction of the photographs at the guilt and sentence phase. Each of the photographs introduced into evidence had probative value. The photographs used during the guilt phase illustrated the cause of death, the circumstances surrounding the death, and the position of the body. The photographs used during the sentencing phase demonstrated that the victim had multiple lacerations and bruises. That the victim was bruised before she was killed demonstrates the cruelty of the crime. That she was struck in the head three times with a wood splitting maul demonstrates that the crime was atrocious. The nature of the crime was in issue during Pinkney's sentencing trial and the pictures, which were probative, *348 were properly admitted. See Johnson, 476 So.2d 1195, 1206 (Miss. 1985), and Williams v. State (No. DP-56, decided October 7, 1987, not yet reported), Slip op. at 3-5. To the extent that Pinkney objects to the photographs on the basis of Stringer v. State, 500 So.2d 928, 934-35 (Miss. 1986), he is mistaken. The pictures in Stringer were used during closing argument and were from a separate and distinct crime. That is not the case here and this assignment of error is without merit.

VIII.

THE TRIAL COURT ERRED IN INTRODUCING CERTAIN EVIDENCE AT THE GUILT PHASE OF TRIAL, VIOLATING APPELLANT'S RIGHTS UNDER THE FOURTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTIONS 14, 23, 26, AND 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney argues that the trial judge committed error when (1) by admitting his boots and car mat into evidence; (2) failing to require the prosecution to reveal the identity of the confidential informant; (3) restricting the defense's cross-examination; (4) allowing character evidence to be admitted about Deputy Turcotte.
The car mat was obtained after the police officers had gotten Pinkney's valid, written consent. The trial judge's ruling was not erroneous. See Hemmingway v. State, 483 So.2d 1335, 1336 (Miss. 1986).
Regarding Pinkney's second claim, it is settled law that the prosecution should, if asked, reveal the identity of a confidential informant if that informant is an eye witness or was a participant in the crime. See Swindle v. State, 502 So.2d 652, 658 (Miss. 1987). In this case the trial judge specifically determined that the informant was not an eye witness or co-actor. There is no merit to this contention.
The objected to question was directed at Officer Leach, asking him if he had read David Richards' Miranda warnings. The prosecution objected to this question, apparently because it was repetitive. There is no error in thus restricting cross-examination. This assignment is nowhere near the extreme limitation of cross-examination which we condemned in Miskelley v. State, 480 So.2d 1104 (Miss. 1985), and was not error.
The testimony of Officer Roosevelt Davis was that he had never seen Deputy Turcotte carry a gun. This was not reputation or character evidence to show that Turcotte was peaceful, etc. but a statement of fact. This testimony was offered on rebuttal after Pinkney testified that Turcotte threatened him with a gun. This assignment of error is without merit.

IX.

THE PROSECUTOR'S VARIOUS STATEMENTS TO THE JURY, INDIVIDUALLY AND CUMULATIVELY, DEPRIVED APPELLANT TO HIS RIGHT TO FUNDAMENTAL FAIRNESS UNDER SECTION 14 OF THE MISSISSIPPI CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND OF HIS RIGHT TO A RELIABLE AND RATIONALLY VERIFIABLE SENTENCING DECISION UNDER SECTION 28 OF THE MISSISSIPPI CONSTITUTION AND THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

A.

THE PROSECUTOR IMPERMISSIBLY REQUESTED THE JURORS TO "COMMIT" TO A SENTENCE OF DEATH AND CALLED UPON THE JURY TO HONOR THOSE "COMMITMENTS" ON CLOSING ARGUMENT.
Citing Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), Pinkney contends that various statements by the prosecutor denied him a fair trial.
He first argues that the prosecutor impermissibly asked the jurors to commit to sentencing him to die if the crime was proved. Stringer v. State, 500 So.2d 928, *349 938 (Miss. 1986); West v. State, 485 So.2d 681 (Miss. 1985). Among District Attorney Peters' questions during voir dire were the following:
Mr. Askew, you said, as I understand it, you're for the death penalty sometimes. Is that correct?
MR. ASKEW: Yes.
MR. PETERS: Would that include a person who murders another person and has no prior record; that is, he hasn't killed anyone else, he has no prior record.
MR. ASKEW: I guess it would just depend on how bad the situation was.
... .
MR. PETERS: Would one person killing another person, no prior record so far as you're concerned that could justify the death penalty; that could fall within your statement of you could vote for it sometimes.
MR. ASKEW: Yes, sir.
MR. PETERS: You heard the question I asked the other two jurors: One person killing another person with no prior record, could that justify the death penalty in your opinion 
MR. BOATNER: Yes, sir.
MR. PETERS:  if the circumstances are otherwise justifying? And your answer is "yes." Thank you.
MR. PETERS: Mr. Brock, you said in certain circumstances. You've heard the questions that I've asked the other jurors. Would this, would your definition of certain circumstances include one person killing another person with no prior record?
MR. BROCK: That's correct.
At the start of his closing argument the prosecutor stated:
And every single one of you ladies and gentlemen sat here for five hours during the course of Mr. Peters voir dire and for several more hours during the course of the defense voir dire and you answered question after question after question, as a group, and for the most part individually. And you all stated under oath, under your oath that if the facts justified the death penalty that you impose it. That was your oath, individually and as a group.
In closing argument, the prosecutor stated:
And if we're going to go around and say, "Let's do away with lynch mobs. Let's have some justice," then the system is going to have to work. Because a system that doesn't work is no system at all. And if twelve jurors can take the jury stand and say on their oath that if one person is killed, if the person doesn't have a prior record, if the person has some character witnesses to come in and talk for him, that I will still vote for the death penalty if the crime is bad enough, then we're going to test the system right now and see if those are shallow promises or see if those were meaningful promises. To see if the system will keep working or if we can just quit and go back to the old way, don't even give them a trial, just give them the same thing they used to do; let's get a rope and take them out and hang them. A lot of people think you ought to do that. If the system quits working, they'll sure get back to it. Retribution is what that's called. Some justice for the victim. Some justice for the victim's family. Victim's rights.
The prosecutor's argument is not as egregious as that in Stringer, supra. Furthermore this assignment of error is susceptible to the same procedural bar analysis put forth in West, supra. The trial judge did not abuse his discretion in declining, sua sponte, to remedy the errors in the prosecutor's voir dire. On the merits this assignment of error does not mandate reversal. See Williams v. State (No. DP-56, decided October 7, 1987, not yet reported), Slip op. 1-3.

B.

THE PROSECUTOR'S ADVOCACY OF THE DECEASED'S FAMILY WAS IMPROPER ARGUMENT.
No new arguments were put forward under this assignment except that this Court should not consider this issue in a *350 vacuum. We have dealt with this assignment and it is without merit.

C.

THE PROSECUTOR'S USE OF THE PHOTOGRAPHS OF THE DECEASED IN CLOSING ARGUMENT OF THE SENTENCING PHASE WAS IMPROPER.
No new arguments or authority were advanced in support of this proposition which we have already addressed and found to be without merit.

D.

THE PROSECUTORS' VOUCHING FOR THE CREDIBILITY OF THEIR WITNESSES, AND GIVING THEIR PERSONAL OPINIONS OF PINKNEY'S CREDIBILITY, WAS IMPROPER.
Under this assignment Pinkney contends that Assistant District Attorney Cynthia Hewes violated the Mississippi Code of Professional Responsibility, DR 7-106(C)(4) (in effect at the time of trial) by stating:
[Y]ou will find that Steve Bailey did a fine job . ..
[Y]ou will see that this is an incredibly well done investigation because, ladies and gentlemen, this is different from most cases I've ever seen ..."
It is also alleged that Ms. Hewes gave her personal opinion of the credibility of Pinkney's statements regarding his confession and vouched for the credibility of Dr. Galvez. See Stringer v. State, 500 So.2d at 935-937.
DR 7-106(C)(4), Mississippi Code of Professional Responsibility provides as follows:
DR 7-106. Trial Conduct.
.....
(C) In appearing in his professional capacity before a tribunal, a lawyer shall not.
.....
(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.
We do not endorse the propriety of the arguments employed by Ms. Hewes, but they do not amount to "vouching" for the credibility of a witness. Neither do the comments give rise to reversible error. Stringer, supra.

E.

THE PROSECUTOR'S COMMENTS DURING THE TRIAL WERE IMPROPER.
This assignment of error arises out of a lengthy objection made by the prosecution to the introduction of some of Pinkney's clothing into evidence. The matter had previously been ruled on, in chambers. Also, it is argued that the following exchange between the prosecutor and Pinkney constitutes reversible error:
Q. You think, then, the only reason that I'm upset about this is because a white woman was killed and a black man did it.
A. Yes.
Q. What would you say if I told you that two people have gotten the death penalty in this district who were white and killed a black man?
A. I don't know because I can't say nothing.
Q. I must not have been too mad at them. That just happened 
MR. STRIBLING:
Your Honor, this is far afield of cross examination, and I object to that.
THE COURT:
It will be sustained.
MR. STRIBLING:
And I also move for a mistrial too.
THE COURT:
Be overruled.
The objection was properly made and sustained. If requested, an admonition would have also been proper. See Stokes v. State, 484 So.2d 1022, 1025 (Miss. 1986). *351 However, no error was committed in denying the motion for mistrial.

F.

THE STATE'S CLOSING ARGUMENT IN THE SENTENCING PHASE WAS IMPROPER.
Here Pinkney raises the prosecutor's argument which has previously been reproduced in this opinion. Pinkney argues that this is an appeal to the community conscience of the jurors and thus improper. He also charges the prosecutor's statement to the jury that "it is not your place to forgive this man" on the basis that this statement was an instruction to exclude sympathy from their considerations. See California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). Pinkney finally challenges the prosecutor's identification of a certain instruction as a "defense instruction" in violation of Rule 5.03, Uniform Criminal Rules of Circuit Court Practice. Pinkney asks us to reverse the entire trial, or at least the penalty phase.
The prosecution raises once again the argument of procedural bar. In the alternative, it is argued that this assignment is meritless.
Pinkney's argument that the remark "it is not your place to forgive this man" is an instruction to disregard, in toto, sympathy, is without merit and procedurally barred. See California v. Brown, supra; Cole, supra; West, supra. There is a practical, as well as a metaphysical, difference between sympathy and forgiveness. Although a jury may not be instructed to disregard, in toto, sympathy, a prosecutor may argue that a defendant is not deserving of sympathy. This assignment of error is procedurally barred and without merit.
Finally Pinkney challenges the following ruling by the trial court:
And we know that's true because defense Instruction 10 that I've just read to you from with all the mitigating circumstances, they didn't put one down here on the bottom that says, "consider this following mitigating circumstance, that being that the defendant is sorry, he is remorseful." That's not even on this sheet.
MR. STRIBLING:
Your Honor, we're going to object to her singling out instructions, such as saying it's defense instructions.
THE COURT:
That will be overruled.
MR. STRIBLING:
Ask the Court to instruct  the jury be instructed to disregard it.
THE COURT:
She's on closing argument.
The State concedes that the prosecutor's comment was erroneous, Shelby v. State, 402 So.2d 338, 341 (Miss. 1981), and Forrest v. State, 335 So.2d 900 (Miss. 1976), but contends that the error was harmless. In Forrest this Court stated:
An error is harmless only when it is apparent from the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty.
Forrest, 335 So.2d at 903; See also, Rule 11, Rules of Mississippi Supreme Court.
The proper standard of review for such an error is whether the error undermines confidence in the outcome of the trial. Malone v. State, 486 So.2d 367, 368 (Miss. 1986). Or, whether the ruling denied the defendant a fundamentally fair trial. Lockett v. State (I), 517 So.2d 1317, 1333 (Miss. 1987). This case is different from Forrest, supra, in which an evidentiary error together with the prosecutor's telling jurors how to identify defense instructions required the reversal of a conviction. Forrest, 335 So.2d at 903. The comments of the district attorney in the case at hand are improper but not as egregious as those in Forrest. 335 So.2d at 900. However, in Forrest, unlike the case at hand, the trial judge quickly, emphatically, and properly sustained the defense objection to the argument. Forrest, 335 So.2d at 901-02.
In this case the prosecutor very clearly violated a long established rule by specifying to the jury the origin of various instructions. If the objection had been sustained and the jury properly admonished there *352 would be nothing to this assignment. The prosecutor was in error, the defense attorney properly objected and the trial court erroneously refused to sustain the objection and instruct the jury to disregard the comments. However, the comments by the prosecutor were made in an effort to show that no mitigating circumstances had been shown. Mitigating circumstances instructions are always offered to the court by the defendant. While the conduct of the prosecutor was clearly improper and a ruling of the trial judge was clearly wrong, the error does not undermine our confidence in the outcome of the trial and did not deny the defendant a fundamentally fair trial. There is therefore, no merit to this assignment of error.

X.

THE TRIAL COURT ERRED IN SUSTAINING THE PROSECUTOR'S OBJECTIONS TO APPELLANT'S CLOSING ARGUMENT AT THE GUILT PHASE OF THE TRIAL, THUS DEPRIVING APPELLANT OF HIS RIGHTS UNDER THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT OF THE FEDERAL CONSTITUTION AND SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION.
Pinkney contends that reversible error occurred during the following colloquy:
Officer Turcotte, Officer Davis. You heard Officer Turcotte testify. First time he sees Officer Turcotte, Officer Turcotte says, "I read him his rights. First thing I did was read him his rights." I don't believe that either. I don't believe that's the first thing a police investigator does.
MR. PETERS:
Please the Court, we would  I let him get by with it once, but it's against the Court rules and rules of evidence for an attorney to comment on what he believes and doesn't believe.
THE COURT:
Objection will be sustained. It will be up to the jury to determine the believability of the witness.
MR. YOUNG:
Okay. Ladies and gentlemen, you can believe as to that. I'm not allowed to comment on it.
Pinkney does not argue that his attorney's closing argument was proper. Instead, he argues that since the trial judge had permitted the prosecutor to make similarly improper arguments defense counsel should likewise have been permitted to commit err. To disallow an improper argument, Pinkney contends, violates his rights to due process, fundamental fairness, and of course, equal protection.
There is no particular authority offered in support of this assignment, which is without merit. It should be noted that the trial court sustained an objection to the prosecutor's "puffing" of Dr. Galvez' credentials. Also, the prosecutor's comment regarding the relative credibility of Pinkney was not objected to and was therefore never ruled on by the trial judge. None of the prosecutor's comments are analogous to the ruling complained of here. Pinkney's argument is bottomed on a theory that two improper arguments make for a fair trial. That is not the law.

XI.

THE TRIAL COURT ERRED IN NOT DIRECTING A VERDICT NO GREATER THAN SIMPLE MURDER, ON GROUNDS THAT THE UNDERLYING CRIME OF BURGLARY WAS NOT PROVED BEYOND A REASONABLE DOUBT, VIOLATING APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney contends that the evidence was not sufficient to support the charge of capital murder. The evidence concerning the burglary, according to Pinkney, is inherently unbelievable. In the alternative, Pinkney argues that since the property he intended to take (marijuana) was contraband  *353 it was not capable of being owned and cannot therefore be "the property of another."
To test the sufficiency of the evidence of the underlying crime of burglary the following standard must be applied:
In the present context we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the guilt must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Glass v. State, 278 So.2d 384, 386 (Miss. 1973). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
Wetz v. State, 503 So.2d 803, 808 (Miss. 1987).
Pinkney's story about the break-in is bizarre  but not unbelievable. The physical evidence tends to corroborate the prosecution's theory of the case and this assignment of error is without merit.

XII.

THE TRIAL COURT ERRED IN REFUSING TO GIVE JURY INSTRUCTIONS D-3, D-8, AND D-10, PROFFERED BY APPELLANT AT THE CLOSE OF THE GUILT PHASE OF THE TRIAL, VIOLATING THE APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney argues that he was entitled to a manslaughter instruction. He contends that because he stated in his confession (which he repudiated at trial) that Tracey Hickman struck him with her fist and skillet, he was entitled to a manslaughter instruction. See Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Wetz v. State, supra; Lanier v. State, 450 So.2d 69 (Miss. 1984).
In his confession Pinkney stated that after he broke into Hickman's house she hit him with her fist and a skillet. However, he stated that she was on the floor when he reached through the broken window, picked up the wood splitting maul, went to where she was lying, and struck her in the head two or three times with the maul.
In Lanier, supra, this Court addressed a similar contention and stated:
The defendant cites in support of his contention Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), both of which unequivocally hold that a manslaughter instruction is proper and essential "when the evidence warrants." This, of course, accords with this Court's holding in Jackson v. State, 337 So.2d 1242, 1255 (Miss. 1976), where we held that instructions on a lesser included offense, "should only be given after the trial court has carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence." See Dase v. State, 356 So.2d 1179 (Miss. 1978); Lee v. State, 130 Miss. 852, 94 So. 889 (1923); and other cases to the same effect which are too numerous to mention.
Lanier, 450 So.2d at 79.
In Lanier we held that a manslaughter instruction should have been granted since *354 the defendant in his confession stated that the alleged victim fired the first shot. Lanier, 450 So.2d at 80. The physical evidence corroborated Lanier's statement and Lanier never took the stand and repudiated his confession. Lanier, 450 So.2d at 80.
This case is different. Pinkney's requested manslaughter instruction was completely at odds with his testimony that he never went to Hickman's house and did not even know where she lived. The evidence on this record did not entitle Pinkney to a manslaughter instruction; although the better and safer course would have been to grant the requested instruction, no error resulted from the trial judge's ruling. In Gates v. State, 484 So.2d 1002 (Miss. 1986), we addressed the failure of a trial judge to grant a manslaughter instruction and stated:

Harper v. State, 478 So.2d 1017 (Miss. 1985), sets out the test to be applied to determine when an instruction on a lesser included offense should be submitted to the jury:
[A] lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

Id. at 1021.
Gates, 484 So.2d at 1004.
This assignment is therefore without merit.
Pinkney also contends that the lower court's failure to grant his instruction on specific intent, D-8, allowed the State to take advantage of a series of rebuttable presumptions. See Nichols v. State, 207 Miss. 291, 42 So.2d 201 (1949). Additionally, he argues that the failure to grant this instruction violated the Eighth and Fourteenth Amendments. See Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).
Pinkney requested the following instruction:
The Court instructs the jury that the crime of burglary of a dwelling charged in the indictment is a necessary element in the charge of capital murder and requires proof beyond a reasonable doubt that the defendant, Bobby Joe Pinkney, broke into and entered the dwelling of Tracey Hickman with the specific intent to steal the personal property of Tracey Hickman before he can be convicted of capital murder. Specific intent is an essential element of the alleged offense, and the state must prove beyond a reasonable doubt such specific intent. Such specific intent, as the term implies, means more than the general intent to commit an unlawful act. To establish specific intent to steal the personal property of Tracey Hickman, the state must prove beyond a reasonable doubt that the defendant knowingly did an act which the law forbids, purposefully intending to violate the law and unless you believe beyond a reasonable doubt that the defendant intended to steal the aforesaid personal property, then you should find the defendant not guilty of capital murder.
The following instruction regarding intent was given:
The Court instructs the Jury in this case, that in determining the issue of the intent to commit the crime of burglary of the dwelling house of the deceased, Tracey Thompkins Hickman, the Jury may consider, in addition to any direct evidence which you believe, beyond a reasonable doubt, if any, the acts of the person involved, as well as the circumstances surrounding such actions. It is not necessary for that intent to be express, and the surrounding facts are factors the Jury may consider, if they believe them beyond a reasonable doubt. If the Jury finds, beyond a reasonable doubt, that the Defendant, Bobby Joe Pinkney, did break and enter the dwelling house of Tracey Thompkins Hickman, said dwelling house being then and *355 there occupied by Tracey Thompkins Hickman, with his intent to then and there unlawfully, feloniously and burglariously take, steal and carry away the personal property of Tracey Thompkins, then and there situated in said dwelling house, then and in that event, such acts constitute the crime of burglary, provided you believe the above, form the evidence in this case, beyond a reasonable doubt.
The jury was adequately instructed on the issue of intent and this assignment of error is without merit. See Washington v. State, 361 So.2d 61, 65-66 (Miss. 1978).

XIII.

THE TRIAL COURT ERRED IN PERMITTING WITNESSES TURCOTTE AND GALVEZ TO RENDER OPINIONS IN THE PRESENCE OF THE JURY WHICH INVADED THE PROVINCE OF THE JURY.
Pinkney argues that the trial judge erred in allowing Dr. Galvez and Officer Turcotte to express an opinion on the relative atrocity of this crime. In fact, Galvez and Turcotte did not express opinions on the issue. Although each said that the crime was the worst he had ever seen, neither testified as to the ultimate issue. The jury could have accepted the testimony of both and still found that the crime was not especially heinous, atrocious, or cruel. See Dycus v. State, 440 So.2d 246, 254-255 (Miss. 1983).

XIV.

THE LOWER COURT ERRED IN GRANTING THE STATE'S SENTENCING INSTRUCTIONS S-1 AND S-3, DENYING APPELLANT'S INSTRUCTION DS-7, AND DELETING PARAGRAPH FOUR OF APPELLANT'S INSTRUCTION DS-10, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION.
Pinkney argues that the trial judge erred in granting jury instructions S-1 and S-3. The thrust of this argument is that these instructions fail to define "especially heinous, atrocious or cruel." It should be noted that Pinkney offered no instruction to further define "especially heinous, atrocious or cruel," and therefore may be barred from raising this issue on appeal. See Newell v. State, 308 So.2d 71, 78 (Miss. 1975).
Notwithstanding, we consider this argument in light of the United States Supreme Court's recent decision in Maynard v. Cartwright, 486 U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), in which the court considered an Eighth Amendment vagueness challenge directed at the aggravating circumstance of "especially heinous, atrocious or cruel" in Oklahoma's capital sentencing statute. See Mississippi Code Annotated, § 99-19-101(5)(h) (Supp. 1988). The essence of Maynard is that the "especially heinous, atrocious or cruel" aggravating circumstance is too vague and leaves the jury with unchanneled discretion in imposing the death penalty. In other words, this aggravating circumstance is unconstitutionally vague because it does not offer sufficient guidance to the jury in deciding whether to impose the death penalty. 486 U.S. at ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 382.
This being so, we must hold that the jury in the instant case considered an invalid aggravating circumstance in deciding whether to impose the death penalty. However, the question left open by Maynard, and which distinguishes Maynard from the present case, is whether the death penalty will remain in spite of the successful challenge brought against one aggravating circumstance.
In Maynard, the presence of another, unchallenged, aggravating circumstance did not sustain the death sentence where Oklahoma had no procedure for attempting to save a death penalty when one of the several aggravating circumstances was held to be invalid; instead, when this case was decided, the Oklahoma Court simply vacated the death sentence and automatically *356 imposed a sentence of life imprisonment. 486 U.S. at ___, 108 S.Ct. at 1857, 100 L.Ed.2d at 379.
To the contrary,
[T]his Court (Mississippi) has held and established unequivocally through the years that when one aggravating circumstance is found to be invalid or unsupported by the evidence, a remaining valid aggravating circumstance will nonetheless support the death penalty verdict. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). See Mississippi Cases: Edwards v. Scroggy, 849 F.2d 204 (5th Cir.1988); Evans v. Thigpen, 809 F.2d 239 (5th Cir.1987); Nixon v. State, [533] So.2d [1078], No. DP-65 (Miss. November 25, 1987) Slip Op. at 34; Lockett v. State, 517 So.2d 1346, 1355 (Miss. 1987); Lockett v. State, 517 So.2d 1317, 1336 (Miss. 1987); Faraga v. State, 514 So.2d 295, 309 (Miss. 1987); Johnson v. State, 511 So.2d 1333, 1337 (Miss. 1987); Stringer v. State, 500 So.2d 928, 945 (Miss. 1986); Irving v. State, 498 So.2d 305, 314 (Miss. 1986); Wiley v. State, 484 So.2d 339, 351-52 (Miss. 1986); Edwards v. State, 441 So.2d 84, 92 (Miss. 1983); Tokman v. State, 435 So.2d 664, 670 (Miss. 1983); Evans v. State, 422 So.2d 737, 743 (Miss. 1982).
Clemons v. State, 535 So.2d 1354, 1362 (1988).
In Edwards v. Scroggy, a Mississippi case, the Fifth Circuit considered what effect the erroneous admission of a misdemeanor conviction in the sentencing phase had on the sentence ultimately imposed by the jury. There the court said:
... Assuming that the misdemeanor conviction of carrying a concealed weapon is necessary to support the jury's finding of this aggravating circumstance, appellant's argument nevertheless must fail. The Court in Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), held that the invalidation of one aggravating circumstance did not require the vacation of the death penalty so long as there were other valid aggravating circumstances remaining. [Footnote omitted]. The jury in this case found six aggravating circumstances and the invalidation of one of them would not require vacation of the death sentence. See Rault v. Butler, 826 F.2d 299 (5th Cir.1987); cert. denied, ___ U.S. ___, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); Celestine v. Butler, 823 F.2d 74 (5th Cir. 1987); Evans v. Thigpen, 809 F.2d 239 (5th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987). The district court correctly rejected this claim.
849 F.2d at 211; see also, Clemons v. State, 535 So.2d at 1362-63.
In a footnote, the Fifth Circuit discussed the effect of Maynard v. Cartwright, as follows:

Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), just decided by the Supreme Court does not undermine this conclusion. In Maynard, the petitioner was sentenced to death following a finding by an Oklahoma jury of two statutory aggravating circumstances: "an especially heinous, atrocious or cruel" murder and the defendant "knowingly created a great risk of death to more than one person." The Supreme Court determined that the first aggravating circumstance was invalid; the second remained unchallenged. The Court, however, instead of reinstating the death penalty, approved a remand of the case to the Oklahoma Court of Criminal Appeals. But the opinion makes it clear that the Court approved this remand because Oklahoma law was unclear on whether the sentence of death should be set aside if one of the aggravating circumstances was found invalid and others remained unchallenged. Consequently, the case was remanded to the Oklahoma court to determine as a matter of state law whether the sentence should be set aside. Unlike Oklahoma law, however, Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain. Edwards v. State, 441 So.2d 84, 89, 92 (Miss. 1983).
849 F.2d at 211, n. 7; see also, Clemons v. State, 535 So.2d at 1363.
*357 In the case at hand, the jury found two aggravating circumstances and no mitigating ones. As outlined above, our well recognized practice has been to leave such sentences undisturbed. While Maynard v. Cartwright dictates that the aggravating circumstance "especially heinous, atrocious or cruel" must fall, that case does not dictate that the death penalty must also fall. Clemons, 535 So.2d at ___; Maynard, 486 U.S. at ___, 108 S.Ct. at 1860, 100 L.Ed.2d at 383. Here, also as in Edwards v. Scroggy, and in Clemons v. State, it appears beyond a reasonable doubt that the jury's verdict would have been the same with or without the invalid aggravating circumstance. Therefore, we find error in the jury's consideration of this aggravating circumstance as given, but consistent with Maynard and our prior practice, we leave the ultimate sentence of death intact.
In the future, however, Maynard v. Cartwright dictates that our capital sentencing juries in this State be more specifically instructed on the meaning of "especially heinous, atrocious or cruel." While the court in Maynard did not set forth a specific limiting construction to be used, this Court has in several instances placed a limiting construction on "especially heinous, atrocious or cruel."
In Coleman v. State, 378 So.2d 640 (Miss. 1979), we recognized the construction found in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), which states:
What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim. 578 F.2d at 611. (Emphasis in original).
378 So.2d at 648; see also, Jordan v. State, 464 So.2d 475, 478 (Miss. 1985).
In Evans v. State, 422 So.2d 737, 743 (Miss. 1982), we held that the jury could consider "mental torture and aggravation which the victim probably underwent" in order to determine whether or not the murder was "especially heinous, atrocious or cruel." We note also that barbarity sufficient to satisfy this aggravating circumstance can be demonstrated by showing that the defendant utilized a method of killing which caused serious mutilation, where there is a dismemberment of the corpse, where the defendant inflicted physical or mental pain before death, or where a lingering or torturous death was suffered by the victim. See also, Billiot v. State, 454 So.2d 445, 464-65 (Miss. 1984).
Finally, in Maynard v. Cartwright, the U.S. Supreme Court said:
We also do not hold that some kind of torture or serious physical abuse is the only limiting construction of the heinous, atrocious, or cruel aggravating circumstance that would be constitutionally acceptable.
486 U.S. at ___, 108 S.Ct. at 1859-60, 100 L.Ed.2d at 382.
Because the recognized practice of this Court allows death penalties in cases like this to be left undisturbed, we need not here attempt to apply the limiting construction of "especially heinous, atrocious or cruel" to the record before us. Instead, it is sufficient for us to hold that hereafter, capital sentencing juries of this State should and must be specifically instructed about the elements which may satisfy the aggravating circumstance of "especially heinous, atrocious or cruel." Nothing we say here, therefore, conflicts with Maynard v. Cartwright, or with our prior death penalty practice and procedure.
Pinkney also contends that the trial court erred in deleting from Instruction DS-10 the language that "with the exception of the events of October 24, 1984, the defendant has always been a quiet, polite individual." Since there was evidence to the contrary, the trial judge struck the language. The instructions show that the jury was adequately informed of the facts of Pinkney's background. There was no impermissible restriction of the mitigating circumstances which the jury could consider. Contra Davis v. State, 512 So.2d 1291, 1293 (Miss. 1987).
*358 Therefore, this assigned error has merit insofar as we hold the jury's consideration of the aggravating circumstance at issue erroneous, but the assigned error has no merit insofar as the invalid aggravating circumstance does not require vacation of the death penalty.

XV.

THE TRIAL COURT ERRED IN LIMITING THE APPELLANT'S CLOSING ARGUMENT IN THE SENTENCING PHASE, VIOLATING APPELLANT'S RIGHT TO ADDRESS THE JURY SECURED BY SECTION 26 OF THE MISSISSIPPI CONSTITUTION.
In closing, Pinkney addressed the jury as follows:
Y'all got the privilege to say I'm guilty, I mean, I'm sorry  let me take that back because the Judge advised me I can't say that because y'all already convict me. All I supposed to do now is beg for my life, to show sympathy for the Hickman family.
In fact the trial judge, in chambers, had instructed Pinkney not to argue his guilt. No objection was ever made to this ruling. In this appeal Pinkney contends that the trial court's limitation on his address to the jury violated his rights under Section 26 of the Mississippi Constitution. See Gray v. State, 351 So.2d 1342, 1345 (Miss. 1977).
We note that defense counsel, when he argued to the jury, argued "residual doubt" and in our view that renders this assignment without merit. See also, Cole v. State, supra.
The limitation of Pinkney's argument did not deny him a fundamentally fair trial, and the same ground was covered by his attorney. This assignment of error is without merit.

XVI.

THE MISSISSIPPI CAPITAL MURDER STATUTE, MISSISSIPPI CODE SECTION 97-3-19, IS UNCONSTITUTIONAL IN THAT IT PERMITS THE UNDERLYING FELONY USED TO SUPPORT A FINDING OF CAPITAL MURDER TO BE USED AS EVIDENCE OF AGGRAVATING CIRCUMSTANCES FOR PURPOSES OF IMPOSING THE DEATH PENALTY, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 28 OF THE MISSISSIPPI CONSTITUTION.
The doubling up argument has been repeatedly raised and rejected by this Court. See Jones v. State, 517 So.2d 1295 (Miss. 1987), and cases cited therein.
Additionally, Pinkney's contention that the double counting of a felony is constitutionally impermissible was recently addressed in Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), wherein the U.S. Supreme Court held:
It seems clear to us from this discussion that the narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilty responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase. See also Zant, supra, [462 U.S.] at 876, n. 13, [103 S.Ct. at 2742] discussing Jurek [v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)] and concluding, "in Texas, aggravating and mitigating circumstances were not considered at the same stage of the criminal prosecution."
Here, the "narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance *359 in addition is no part of the constitutionally-required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm. There is no question but that the Louisiana scheme narrows the class of death-eligible murderers and then at the sentencing phase allows for the consideration of mitigating circumstances and the exercise of discretion. The Constitution requires no more.
Lowenfield, 484 U.S. at ___, 108 S.Ct. at 555. There is no merit to this assignment.

XVII.

THE SENTENCE OF DEATH IS DISPROPORTIONATE TO THE CRIME FOR WHICH PINKNEY WAS CONVICTED.
The sentence of death is not disproportionate under Section 99-19-105, Mississippi Code Annotated (1972), as Amended, in that the evidence shows that Pinkney deliberately committed this heinous crime. There is no evidence that Pinkney suffers from any mental aberration nor does it appear that he acted out of fear for his life when he killed Hickman. See Edwards v. State, 441 So.2d 84 (Miss. 1983); Coleman v. State, 378 So.2d 640 (Miss. 1979).
There is no merit to this assignment of error as to guilt.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. WEDNESDAY, JANUARY 18, 1989, SET AS DATE FOR EXECUTION OF SENTENCE IN THE MANNER PROVIDED BY LAW.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON and ZUCCARO, JJ., concur as to guilt phase.
ROBERTSON, J., dissents as to sentencing phase.
HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ., not participating.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT
Clemons v. State, 535 So.2d 1354 (Miss. 1988).
Woodward v. State, 533 So.2d 418 (Miss. 1988).
Nixon v. State, 533 So.2d 1078 (Miss. 1987).
Williams v. State, No. DP-56 (Miss. October 7, 1987).
Cole v. State, 525 So.2d 365 (Miss. 1987).
Lockett v. State, 517 So.2d 1346 (Miss. 1987).
Lockett v. State, 517 So.2d 1317 (Miss. 1987).
Faraga v. State, 514 So.2d 295 (Miss. 1987).
Jones v. State, 517 So.2d 1295 (Miss. 1987).
Wiley v. State, 484 So.2d 339 (Miss. 1986).
Johnson v. State, 477 So.2d 196 (Miss. 1985).
Gray v. State, 472 So.2d 409 (Miss. 1985).
Cabello v. State, 471 So.2d 332 (Miss. 1985).
Jordan v. State, 464 So.2d 475 (Miss. 1985).
Wilcher v. State, 455 So.2d 727 (Miss. 1984).
Billiot v. State, 454 So.2d 445 (Miss. 1984).
Stringer v. State, 454 So.2d 468 (Miss. 1984).
Dufour v. State, 453 So.2d 337 (Miss. 1984).
Neal v. State, 451 So.2d 743 (Miss. 1984).
Booker v. State, 449 So.2d 209 (Miss. 1984).
Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
*360 Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE
Houston v. State, 531 So.2d 598 (Miss. 1988).
West v. State, 519 So.2d 418 (Miss. 1988).
Davis v. State, 512 So.2d 1291 (Miss. 1987).
Williamson v. State, 512 So.2d 868 (Miss. 1987).
Foster v. State, 508 So.2d 1111 (Miss. 1987).
Smith v. State, 499 So.2d 750 (Miss. 1986).
West v. State, 485 So.2d 681 (Miss. 1985).
Fisher v. State, 481 So.2d 203 (Miss. 1985).
Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Fuselier v. State, 468 So.2d 45 (Miss. 1985).
West v. State, 463 So.2d 1048 (Miss. 1985).
Jones v. State, 461 So.2d 686 (Miss. 1984).
Moffett v. State, 456 So.2d 714 (Miss. 1984).
Lanier v. State, 450 So.2d 69 (Miss. 1984).
Laney v. State, 421 So.2d 1216 (Miss. 1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT
White v. State, 532 So.2d 1207 (Miss. 1988).
Bullock v. State, 525 So.2d 764 (Miss. 1987).
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY
Lanier v. State, 533 So.2d 473 (Miss. 1988).
Stringer v. State, 500 So.2d 928 (Miss. 1986).
Pinkton v. State, 481 So.2d 306 (Miss. 1985).
*361 Mhoon v. State, 464 So.2d 77 (Miss. 1985).
Cannaday v. State, 455 So.2d 713 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (Miss. 1984).
Williams v. State, 445 So.2d 798 (Miss. 1984).

DEATH CASES REMANDED
Abram v. State, 523 So.2d 1018 (Miss. 1988).
ROBERTSON, Justice, concurring in affirmance on guilt phase, dissenting from affirmance on sentence:
I concur in affirmance of the judgment that Bobby Joe Pinkney stand convicted of the crime of capital murder. For the reasons set forth in my separate opinion dissenting from affirmance of the death sentence in Clemons v. State, 535 So.2d 1354 (Miss. 1988), I would reverse the judgment that Pinkney be sentenced to death and remand to the Circuit Court for a new trial on the matter of sentence only.
HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ., not participating.