KITCHENS, Justice,
dissenting:
-¶ 117. I write separately to express two concerns about this case. First, the trial court committed reversible error by failing to grant a change of venue in this notorious case, which involved a law enforcement family in a small, rural Mississippi'community. Second, the testimony of L.K., a minor; was cumulative of a forensic interview video which the State had published to the jury. I respectfully dissent and would reverse and remand this case for a new trial.
I. Standard of Review
¶ 118. “[T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice.” Pruett v. State, 574 So,2d 1342, 1345 (Miss.1990) (quoting Jackson v. State, 337 So.2d 1242, 1252. (Miss.1976)). Because “death undeniably is different,” we recognize that “procedural niceties give way to the search for substantial justice.” Hansen v. State, 592 So.2d 114, 142 (Miss.1991), “What may be harmless error in a case with-less at stake [may become] reversible error when the penalty is death;” Flowers v. State, 158 So.3d 1009, 1026 (Miss.2014) (quoting Fulgham v. State, 46 So.3d 315, 322 (Miss.2010)). Under our heightened standard of review in death penalty cases, “all doubts.are to be resolved in favor of the accused.” Chamberlin v. State, 989 So.2d 320, 330 (Miss.2008) (citing Lynch v. State, 951 So.2d 549, 555 (Miss.2007)) (emphasis added).
II. Change of Venue
¶ 119, The majority finds that the trial court did not abuse its discretion in denying Cox’.s motion for change of venue.. It is true that rulings on change of venue are reviewed on appeal under an abuse-of-discretion standard: “[t]he decision to grant a change of venue rests soundly in the discretion of the trial judge.” King v. State, 960 So.2d 413, 429 (Miss.2007) (citing Howell v. State, 860 So.2d 704, 718 (Miss.2003)). But that standard does,not relieve this Court of its duty to review this and all other aspects of death penalty cases under heightened scrutiny. Chamberlin, 989 So.2d at 330.
¶ 120. This Court has held that a “motion for a change of venue is not automatically granted in a capital case,” but that “[t]here must be a' satisfactory showing that a defendant cannot receive a fair and impartial trial in the county where the offense is charged.” King, 960 So.2d at 429 (citing Byrom v. State, 927 So.2d 709, 715 (Miss.2006)). Such “satisfactory showing” requires that a motion for change of venue “be in writing and supported' by affidavits of two or more credible persons showing that the defendant cannot receive an impartial and fair trial in that.particular ‘county because of prejudgment of the case or grudge or ill will to the defendant in the mind of the public.” King, 960 So.2d at 429 (quoting Davis v. State, 767 So.2d 986, 993 (Miss.2000)). These cases and others are based in large part upon the requirements of Mississippi Code Section 99-15-35, which predicates a grant of a motion for change of venue on presentation to the trial judge of a written motion, supported by affidavits of two or more people:
On satisfactory showing, in writing, sworn to by the pi'isoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and *67 impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as. to the costs in the case, as may be proper.
Miss.Code Ann. § 99-15-35 (Rev.2007).
¶ 121. Our Uniform Rules of Circuit and County Court Practice contain no requirement that the motion for change of venue be in writing, nor do they contain a requirement that the motion be supported by two affidavits: “Á change of venue may be granted, in the discretion of the judge, upon a showing of good cause.” URCCC 6.06.[22] We have held in the past that the doctrine of separation of powers is violated where the Legislature creates rules of procedure for the courts of this State. See Newell v. State, 308 So.2d 71, 78 (Miss.1975) (“We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield.”); Jones v. City of Ridgeland; 48 So.3d 530, 541 (Miss.2010) (statute held to be unconstitutional “because it usurps this Court’s constitutional rule-making power and violates the doctrine of separation of powers.”). To the extent the requirements of Section 99-15-35 exceed the “showing of good cause” requirement in Rule 6.06, the statute “usurps this Court’s constitutional rule-making power and violates the doctrine of separation of powers.” Jones, 48 So.3d at 541.
¶ 122. A denial of a change of venue in a notorious death penalty case requires our scrupulous consideration of the fundamental right of the defendant to a fair trial, free of the bias and partiality attending publicity: “[a] fair trial is, after all, the reason we have our- system of justice; it is a paramount distinction between free and totalitarian societies.” Johnson v. State, 476 So.2d 1195, 1209 (Miss.1985). Obtaining a change of venue requires that an accused waive the “right to have a trial in the county where the crime occurred.” State v. Caldwell, 492 So.2d 575, 577 (Miss.1986). This Court has held that:'
It is a great mistake to suppose that because an atrocious crime has been committed, for which one ought certainly to be convicted anywhere, therefore a change of venue should not be granted. It is one of the crowning glories of our law that, no matter how guilty one may be, no matter how atrocious his crime, nor how certain ;his doom, when brought to trial anywhere,- he shall, nevertheless, have the same fair and impartial trial accorded to the most innocent defendant. Those safeguards, crystallized into the constitution and laws of the land as the result of the wisdom of centuries of experience, must be, by the courts, sacredly upheld, as well in the case of the guiltiest as of the most innocent defendant answering at the bar of his country. And it ought to be a reflection, always potent in the public mind, that, where the crime is atrocious, condemnation is sure, when all these safeguards are accorded the defendant, and therefore the more atrocious the crime, the less need is there for any infringement of these safeguards.
Johnson, 476 So.2d at 1209 (quoting Tennison v. State, 79 Miss. 708, 713, 31 So. 421, 422 (1902)). Fourteen years later, we held that:
The right to trial by an impartial jury is guaranteed by the organic law of the ' state, and when it is doubtful that such a jury can be obtained in the county of the venue of the homicide, the person on *68 trial for his life is but asking for his rights when he requests a change of venue, and there is no imaginable reason to refuse, except, possibly, a slight additional cost to the county.
Eddins v. State, 110 Miss. 780, 70 So. 898, 899 (1916) (emphasis added). Stated differently, “there is no imaginable reason to refuse” a motion for change of venue where the ability for the defendant to be accorded a fair trial by an impartial jury is “merely doubtful.” Johnson, 476 So.2d at 1210 (citing Eddins, 70 So. at 899).
¶ 123. The accused has “a right to a change of venue when it is doubtful that an impartial jury can be obtained Johnson, 476 So.2d at 1211. “[U]pon proper application, there arises a presumption that such sentiment exists; and, the state then bears the burden of rebutting that presumption.” Id. However, this Court has “set forth certain elements which, when present would serve as an indicator to the trial court as to when the presumption is irrebuttable
(1) Capital cases based on considerations of a heightened standard of review;
(2) Crowds threatening violence toward the accused;
(3) An inordinate amount of media coverage, particularly in cases of:
(a) serious crimes against influential families;
(b) serious crimes against public officials;
(c) serial crimes;
(d) crimes committed by a black defendant upon a white victim;
(e) where there is an inexperienced trial counsel.
White v. State, 496 So.2d 1346, 1349 (Miss.1986) (emphasis added). Also to be considered is the size of the locality from which the venire is to be selected. Rideau v. Louisiana, 373 U.S. 723, 724, 727, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (“The record shows that such a thing as this never took place before in Calcasieu Parish, Louisiana.”).
¶ 124. At the hearing on the motion for change of venue, Cox presented his own affidavit and that of Christopher Tables.[23] Tables stated that he was aware Cox had been charged with murder, that he did not know Cox or any victims of the alleged crime, and that he had “heard talk in the community” regarding the crime. Tables concluded that, “because of the people involved, I do not believe [Cox] can get a fair trial in Union County.”
¶ 125. Also in support of the motion for change of venue, Cox presented various articles to the trial court. One, dated May 15, 2010, from the Northeast Mississippi Daily Journal (Daily Journal), bore the title “Blue Springs hostage situation ends in woman being killed.” The article detailed the events and informed the public that “[a]t the request of the Union County Sheriffs Department and Sherman Police Department,] the Tupelo Police Department SWAT team and negotiator” raided the house and rescued the children, though “Kim Cox had already been shot to death before officers entered.” Another Daily Journal article published two days after the previous article and entitled “Formal charges expected today in hostage case” again related the details of Cox’s alleged crime. On May 18, 2010, the Daily Journal reported that Cox had been charged with capital murder and three counts of kidnapping. On May 19, 2010, the New Albany Gazette reported Cox’s charges, *69 detailed the hostage situation, and pointed out that he had been “recently released from Pontotoc County Jail.” Another article from the Daily Journal dated May 20, 2010, detailed the funeral of Kim Cox and, again, related details of the hostage situation: “[t]hat Kim Cox died a violent death could not be ignored at her funeral on Wednesday.”
¶ 126. The State responded with four witnesses, each of whom professed a belief a fair jury could be impaneled. All four rebuttal witnesses remembered that a murder had taken place involving Cox. One of the State’s witnesses testified as follows: “I remember them talking about, I guess you’d say, the defendant was in the house and they couldn’t get him out and that he killed his, I don’t know whether it was his ex-wife. I guess it was his wife or ex-wife_” Moreover, three of the four witnesses knew the victim’s father, Benny Kirk. One witness stated that Kirk was “pretty well known.” Another stated that he “knew [Kirk] when he was a police officer” and that he “just knew him from being around the courthouse and around here all these years.” Another of those witnesses who testified to knowing Kirk knew him well, “probably 20 years at least,” and stated that Kirk was well known in the community as a police officer. It is of note that Melody Kirk, Kim’s stepmother, also was in law enforcement.
¶ 127. The trial court denied Cox’s motion for change of venue, observing that “I just feel like the State has sufficiently rebutted the argument and the motion .... ” He noted that “[e]ven the Court lives South of Lee County and Tu-pelo and watches Channel 9 and reads the newspaper everyday about 4:30 in the morning, and I’ve not seen anything on this myself personally on television or read anything in the newspaper about it except when it happened.” The majority affirms the ruling of the trial court, writing that “[t]he jury was empaneled in September 2012, more than two years and four months removed from the publication on the crime articles submitted in support.”
¶ 128. No case, however, informs us, and the majority cites none, that a relevant factor to be considered is the length of time between the event and the trial. What is relevant to the consideration of the trial court is the presumption (which if a White factor is shown is irrebuttable) that an impartial jury cannot be obtained. That requires a careful consideration of the media coverage at the time of the event, the population of the venue, and whether such an event had taken place in that locale previously. See Rideau, 373 U.S. at 724, 727, 83 S.Ct. 1417 (media coverage at issue occurred immediately following the alleged crime). Considering that trials often are fairly far removed from the events which give rise to them, if all that mattered was the time that had elapsed between the alleged crime and the trial, no motion for change of venue ever would be granted. With respect, that analysis ignores the fundamental constitutional issue at stake — a fair trial.
¶ 129. The present case involves a heinous capital murder in a county with a small population. The United States Census Bureau reports that Union County contained an estimated population of 27,-745 [24] in 2013, the year after Cox’s trial. See “Union County, Mississippi,” United States Census Bureau, http://quickfacts. census.gov/qfd/states/28/28U5. html (last visited June 24, 2015). At the time of the *70 trial, the local newspapers reported that Kina Cox had been held hostage with her children by her husband, David Cox, that Kina Cox had been killed, and that local police had to call in a Tupelo SWAT team and a hostage negotiator. Members of the community who testified for the State at the hearing on the motion for change of venue recognized and remembered the case, and the victim’s father, Benny Kirk, who was a well-known, well-respected law enforcement officer. This was a capital case involving “[a]n inordinate amount of media coverage” of a “serious crime[] against [an] influential famil[y].... ” White, 495 So.2d at 1349. As such, the presumption of impossibility of impaneling an impartial jury should have been considered by the trial judge to have been irre-buttable.
¶ 130. The majority, having paid but lip service to the heightened scrutiny with which we are bound to consider capital cases, concludes that “[t]he trial court did not abuse its discretion.... ” Maj. Op. ¶27. In a notorious capital case such as this, due process requires that the trial court take extra precaution to protect the defendant’s right to a fair trial. I And no imaginable reason for this motion for change of venue to have been denied. I find that the trial court abused its discretion by having denied the motion, and I would reverse and remand this case to the Circuit Court of Union County for a new trial in a different venue.[25]
II. Forensic Interview Video and L.K.’s Testimony
¶ 131. Cox claims, as he did at trial, that the “inflammatory and unnecessary parading of L.K. before the jury” was more prejudicial than probative under Mississippi Rule of Evidence 403.
¶ 132. A redacted copy of the forensic interview video of L.K, in which she described in lurid detail the horrors she endured on the night her mother was killed, was played before the jury. The video depicted a visibly (and understandably) distraught L.K, who indicated that the incidents of sexual assault upon her on the night in question took place in the presence of her dying mother. Prior to the publication of the video to the jury, Cox waived his right to cross examine L.K Whether L.K. would or would not testify was then disputed: “Are you putting [L.K] on the stand for our purposes or are you putting her on the stand because you had questions for her? I thought the [prior] hearings we had on the [admissibility of] the video was so she would not have to testify. I don’t have to question hex*.” The trial court had ruled prior to the sentencing hearing that the video of the forensic interview was admissible under Mississippi Rule of Evidence 803(25), the tender-years exception, based on the child’s mental and emotional age. The trial court noted, after having viewed the video in camera, that L.K. “held her hands up on her face several times during the interview, just pretty much all the way through it. And she talked, and — she’s now 14, but I still think she’s a child of tender years.”
¶ 133. Immediately following the publication of the video to the jury, the State called L.K. to the stand. Defense counsel objected:
We have waived our confrontation issues so this is something completely out of the blue because I think we started down this journey probably two-and-a- *71 half months ago, and the State’s position jumping and screaming and bringing counselors and social' workers in that [L.K] shouldn’t testify. It is not in her best interest. We agreed.
The State sought to elicit from L.K. testimony that her mother still was alive at the time Cox was sexually assaulting her for the purpose of establishing the especially heinous, atrocious, or cruel aggravator. Defense counsel replied that the video sufficiently proved what the State hoped to elicit from L.K. on the stand:
Your Honor, at 2440 [of the forensic interview video], the question was asked, What was your mom saying? She said, Please don’t. At 2510, What did David say? He told her to shut up. At 2520, What did he do? He made mama and little [D.C] watch. If that’s not she’s alive what is?
Defense counsel stated that “[w]e consider this repetitive testimony where it’s irrelevant and that the prejudicial effect of it outweighs any probative value that it has.”
¶ 134. The majority’s suggestion that the trial court “provided Cox an opportunity to cross examine L.K., negating any constitutional claim of deprivation of the right to confront his accuser” is misplaced. Maj. Op. ¶ 34. My concern is not whether Cox had the opportunity to confront his accuser, which he admittedly waived so that L.K. would not have to testify. I am concerned that, in spite of Cox’s waiver of his right to confront L.K., the State brought L.K. forth to testify anyway. The State elicited the following from L.K. regarding the forensic interview:
Q: I believe in that interview you talked about three sexual acts that David Cox did to you; is that correct?
A: Yes, sir.
Q: Was your mother alive and watching you during all of those three times?
A: Yes, sir.
Just prior to this examination of L.K. by the State, the very same evidence had been presented to the jury in the form of the forensic interview video. The video showed L.K. informing the forensic interviewer that her mother had been made to watch the sexual acts Cox performed on her. Any further questioning about that by the State was, therefore, cumulative, repetitive, and wholly unnecessary to establish the especially heinous, atrocious, or cruel aggravator.
¶ 135. Mississippi Rule of Evidence 403 provides that relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Miss. R. Evid. 403 (emphasis added). Here, the State presented sufficient evidence of the especially heinous, atrocious, or cruel aggravator, and then for no reason at all, except to highlight and bolster a portion of the minor victim’s video interview, brought this victim to the stand to present the exact same evidence, over the strenuous objection of defense counsel. We have held that, “[a]ttorneys are afforded wide latitude in arguing their cases to the jury, but they are not allowed to employ tactics which are ‘inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.’” Flowers v. State, 842 So.2d 531, 553 (Miss.2003) (quoting Sheppard v. State, 777 So.2d 659, 661 (Miss.2001)).
¶ 136. I can divine no other reason for the State’s course of action other than a calculated attempt “to unduly influence the jury.” Id. Because of the heightened scru *72 tiny with which we are bound to consider death penalty cases, I would reverse the trial court’s judgment, vacate the sentence and remand this case to the Circuit Court of Union County for a new trial.
KING, J, JOINS THIS OPINION.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Curtis Giovanni Flowers v. State, 158 So.3d 1009 (Miss.2014). *following remand.
Caleb Corrothers v. State, 148 So.3d 278 (Miss.2014).
Jason Lee Keller v. State, 138 So.3d 817 (Miss.2014).
Leslie Galloway III v. State, 122 So.3d 614 (Miss.2013).
Bobby Batiste v. State, 121 So.3d 808 (Miss.2013).
Roger Lee Gillett v. State, 56 So.3d 469 (Miss.2010).
Moffett v. State, 49 So.3d 1073 (Miss.2010).
Pitchford, v. State, 45 So.3d 216 (Miss.2010).
Goff v. State, 14 So.3d 625 (Miss.2009).
Wilson v. State, 21 So.3d 572 (Miss.2009).
Chamberlin v. State, 989 So.2d 320 (Miss.2008).
Loden v. State, 971 So.2d 548 (Miss.2007).
King v. State, 960 So.2d 413 (Miss.2007).
Bennett v. State, 933 So.2d 930 (Miss.2006).
Havard v. State, 928 So.2d 771 (Miss.2006).
Spicer v. State, 921 So.2d 292 (Miss.2006).
Hodges v. State, 912 So.2d 730 (Miss.2005).
Walker v. State, 913 So.2d 198 (Miss.2005).
Le v. State, 913 So.2d 913 (Miss.2005).
Brown v. State, 890 So.2d 901 (Miss.2004).
Powers v. State, 883 So.2d 20 (Miss.2004)
Branch v. State, 882 So.2d 36 (Miss.2004).
Scott v. State, 878 So.2d 933 (Miss.2004).
Lynch v. State, 877 So.2d 1254 (Miss.2004).
Dycus v. State, 875 So.2d 140 (Miss.2004).
Byrom v. State, 863 So.2d 836 (Miss.2003).
Howell v. State, 860 So.2d 704 (Miss.2003).
Howard v. State, 853 So.2d 781 (Miss.2003).
Walker v. State, 815 So.2d 1209 (Miss.2002). *following remand.
Bishop v. State, 812 So.2d 934 (Miss.2002).
Stevens v. State, 806 So.2d 1031 (Miss.2002).
Grayson v. State, 806 So.2d 241 (Miss.2002).
Knox v. State, 805 So.2d 527 (Miss.2002).
Simmons v. State, 805 So.2d 452 (Miss.2002).
Berry v. State, 802 So.2d 1033 (Miss.2001).
Snow v. State, 800 So.2d 472 (Miss.2001).
Mitchell v. State, 792 So.2d 192 (Miss.2001).
Puckett v. State, 788 So.2d 752 (Miss.2001). * following remand.
*73 Goodin v. State, 787 So.2d 639 (Miss.2001).
Jordan v. State, 786 So.2d 987 (Miss.2001).
Manning v. State, 765 So.2d 516 (Miss.2000). *following remand.
Eskridge v. State, 765 So.2d 508 (Miss.2000).
McGilberry v. State, 741 So.2d 894 (Miss.1999).
Puckett v. State, 737 So.2d 322 (Miss.1999). *remanded for Batson hearing.
Manning v. State, 735 So.2d 323 (Miss.1999). *remanded for Batson hearing.
Hughes v. State, 735 So.2d 238 (Miss.1999).
Turner v. State, 732 So.2d 937 (Miss.1999).
Smith v. State, 729 So.2d 1191 (Miss.1998).
Burns v. State, 729 So.2d 203 (Miss.1998).
Jordan v. State, 728 So.2d 1088 (Miss.1998).
Gray v. State, 728 So.2d 36 (Miss.1998).
Manning v. State, 726 So.2d 1152 (Miss.1998).
Woodward v. State, 726 So.2d 524 (Miss.1997).
Bell v. State, 725 So.2d 836 (Miss.1998).
Evans v. State, 725 So.2d 613 (Miss.1997).
Brewer v. State, 725 So.2d 106 (Miss.1998).
Crawford v. State, 716 So.2d 1028 (Miss.1998).
Doss v. State, 709 So.2d 369 (Miss.1996).
Underwood v. State, 708 So.2d 18 (Miss.1998).
Holland v. State, 705. So.2d 307 (Miss.1997).
Wells v. State, 698 So.2d 497 (Miss.1997).
Wilcher v. State, 697 So.2d 1087 (Miss.1997).
Wiley v. State, 691 So.2d 959 (Miss.1997).
Brown v. State, 690 So.2d 276 (Miss.1996).
Simon v. State, 688 So.2d 791 (Miss.1997).
Jackson v. State, 684 So.2d 1213 (Miss.1996).
Williams v. State, 684 So.2d 1179 (Miss.1996).
Davis v. State, 684 So.2d 643 (Miss.1996).
Taylor v. State, 682 So.2d 359 (Miss.1996).
Brown v. State, 682 So.2d 340 (Miss.1996).
Blue v. State, 674 So.2d 1184 (Miss.1996).
Holly v. State, 671 So.2d 32 (Miss.1996).
Walker v. State, 671 So.2d 581 (Miss.1995).
Russell v. State, 670 So.2d 816 (Miss.1995).
Ballenger v. State, 667 So.2d 1242 (Miss.1995).
Davis v. State, 660 So.2d 1228 (Miss.1995).
Carr v. State, 655 So.2d 824 (Miss.1995).
Mack v. State, 650 So.2d 1289 (Miss.1994).
Chase v. State, 645 So.2d 829 (Miss.1994).
Foster v. State, 639 So.2d 1263 (Miss.1994).
*74 Conner v. State, 632 So.2d 1239 (Miss.1993).
Hansen v. State, 592 So.2d 114 (Miss.1991).
* Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss.1989).
Minnick v. State, 551 So.2d 77 (Miss.1989).
* Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss.1988).
Nixon v. State, 533 So.2d 1078 (Miss.1987).
Cole v. State, 525 So.2d 365 (Miss.1987).
Lockett v. State, 517 So.2d 1346 (Miss.1987).
Lockett v. State, 517 So.2d 1317 (Miss.1987).
Faraga v. State, 514 So.2d 295 (Miss.1987).
* Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss.1986).
Johnson v. State, 477 So.2d 196 (Miss.1985).
Gray v. State, 472 So.2d 409 (Miss.1985).
Cabello v. State, 471 So.2d 332 (Miss.1985).
Jordan v. State, 464 So.2d 475 (Miss.1985).
Wilcher v. State, 455 So.2d 727 (Miss.1984).
Billiot v. State, 454 So.2d 445 (Miss.1984).
Stringer v. State, 454 So.2d 468 (Miss.1984).
Dufour v. State, 453 So.2d 337 (Miss.1984).
Neal v. State, 451 So.2d 743 (Miss.1984).
Booker v. State, 449 So.2d 209 (Miss.1984).
Wilcher v. State, 448 So.2d 927 (Miss.1984).
Caldwell v. State, 443 So.2d 806 (Miss.1983).
Irving v. State, 441 So.2d 846 (Miss.1983).
Tokman v. State, 435 So.2d 664 (Miss.1983).
Leatherwood v. State, 435 So.2d 645 (Miss.1983).
Hill v. State, 432 So.2d 427 (Miss.1983).
Pruett v. State, 431 So.2d 1101 (Miss.1983).
Gilliard v. State, 428 So.2d 576 (Miss.1983).
Evans v. State, 422 So.2d 737 (Miss.1982).
*75 King v. State, 421 So.2d 1009 (Miss.1982).
Wheat v. State, 420 So.2d 229 (Miss.1982).
Smith v. State, 419 So.2d 563 (Miss.1982).
Johnson v. State, 416 So.2d 888 (Miss.1982).
Edwards v. State, 413 So.2d 1007 (Miss.1982).
Bullock v. State, 391 So.2d 601 (Miss.1980).
Reddix v. State, 381 So.2d 999 (Miss.1980).
Jones v. State, 381 So.2d 983 (Miss.1980).
Culberson v. State, 379 So.2d 499 (Miss.1979).
Gray v. State, 375 So.2d 994 (Miss.1979).
Jordan v. State, 365 So.2d 1198 (Miss.1978).
Voyles v. State, 362 So.2d 1236 (Miss.1978).
Irving v. State, 361 So.2d 1360 (Miss.1978).
Washington v. State, 361 So.2d 61 (Miss.1978).
Bell v. State, 360 So.2d 1206 (Miss.1978).
* Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCING PHASE

Manning v. State, 158 So.3d 302 (Miss.2015).
Byrom v. State, 2014-DR-00230-SCT (April 3, 2014) (order).
Ross v. State, 954 So.2d 968 (Miss.2007).
Flowers v. State, 947 So.2d 910 (Miss.2007).
Flowers v. State, 842 So.2d 531 (Miss.2003).
Randall v. State, 806 So.2d 185 (Miss.2002).
Flowers v. State, 773 So.2d 309 (Miss.2000).
Edwards v. State, 737 So.2d 275 (Miss.1999).
Smith v. State, 733 So.2d 793 (Miss.1999).
Porter v. State, 732 So.2d 899 (Miss.1999).
Kolberg v. State, 704 So.2d 1307 (Miss.1997).
Snelson v. State, 704 So.2d 452 (Miss.1997).
Fuselier v. State, 702 So.2d 388 (Miss.1997).
Howard v. State, 701 So.2d 274 (Miss.1997).
Lester v. State, 692 So.2d 755 (Miss.1997).
Hunter v. State, 684 So.2d 625 (Miss.1996).
Lanier v. State, 684 So.2d 93 (Miss.1996).
Giles v. State, 650 So.2d 846 (Miss.1995).
Duplantis v. State, 644 So.2d 1235 (Miss.1994).
Harrison v. State, 635 So.2d 894 (Miss.1994).
Butler v. State, 608 So.2d 314 (Miss.1992).
Jenkins v. State, 607 So.2d 1171 (Miss.1992).
Abram v. State, 606 So.2d 1015 (Miss.1992).
*76 Balfour v. State, 598 So.2d 731 (Miss.1992).
Griffin v. State, 557 So.2d 542 (Miss.1990).
Bevill v. State, 556 So.2d 699 (Miss.1990).
West v. State, 553 So.2d 8 (Miss.1989).
Leatherwood v. State, 548 So.2d 389 (Miss.1989).
Mease v. State, 539 So.2d 1324 (Miss.1989).
Houston v. State, 531 So.2d 598 (Miss.1988).
West v. State, 519 So.2d 418 (Miss.1988).
Davis v. State, 512 So.2d 1291 (Miss.1987).
Williamson v. State, 512 So.2d 868 (Miss.1987).
Foster v. State, 508 So.2d 1111 (Miss.1987).
Smith v. State, 499 So.2d 750 (Miss.1986).
West v. State, 485 So.2d 681 (Miss.1985).
Fisher v. State, 481 So.2d 203 (Miss.1985).
Johnson v. State, 476 So.2d 1195 (Miss.1985).
Fuselier v. State, 468 So.2d 45 (Miss.1985).
West v. State, 463 So.2d 1048 (Miss.1985).
Jones v. State, 461 So.2d 686 (Miss.1984).
Moffett v. State, 456 So.2d 714 (Miss.1984).
Lanier v. State, 450 So.2d 69 (Miss.1984).
Laney v. State, 421 So.2d 1216 (Miss.1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED

FOR RESENTENCING TO LIFE IMPRISONMENT

Reddix v. State, 547 So.2d 792 (Miss.1989).
Wheeler v. State, 536 So.2d 1341 (Miss.1988).
White v. State, 532 So.2d 1207 (Miss.1988).
Bullock v. State, 525 So.2d 764 (Miss.1987).
Edwards v. State, 441 So.2d 84 (Miss.1983).
Dycus v. State, 440 So.2d 246 (Miss.1983).
Coleman v. State, 378 So.2d 640 (Miss.1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

Fulgham v. State, 46 So.3d 315 (Miss.2010).
Rubenstein v. State, 941 So.2d 735 (Miss.2006).
King v. State, 784 So.2d 884 (Miss.2001).
Walker v. State, 740 So.2d 873 (Miss.1999).
Watts v. State, 733 So.2d 214 (Miss.1999).
West v. State, 725 So.2d 872 (Miss.1998).
Smith v. State, 724 So.2d 280 (Miss.1998).
Berry v. State, 703 So.2d 269 (Miss.1997).
Booker v. State, 699 So.2d 132 (Miss.1997).
*77 Taylor v. State, 672 So.2d 1246 (Miss.1996).
* Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498. U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
* Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
* Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss.1992).
Holland v. State, 587 So.2d 848 (Miss.1991).
Willie v. State, 585 So.2d 660 (Miss.1991).
Ladner v. State, 584 So.2d 743 (Miss.1991).
Maekbee v. State, 575 So.2d 16 (Miss.1990).
Berry v. State, 575 So.2d 1 (Miss.1990).
Turner v. State, 573 So.2d 657 (Miss.1990).
State v. Tokman, 564 So.2d 1339 (Miss.1990).
Johnson v. State, 547 So.2d 59 (Miss.1989).
Williams v. State, 544 So.2d 782 (Miss.1989); sentence aff'd 684 So.2d 1179 (1996).
Lanier v. State, 533 So.2d 473 (Miss.1988).
Stringer v. State, 500 So.2d 928 (Miss.1986).
Pinkton v. State, 481 So.2d 306 (Miss.1985).
Mhoon v. State, 464 So.2d 77 (Miss.1985).
Cannaday v. State, 455 So.2d 713 (Miss.1984).
Wiley v. State, 449 So.2d 756 (Miss.1984); resentencing affirmed, Wiley v. State, 484 So.2d 339 (Miss.1986); cert. denied, Wiley v. Mississippi, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988); resentencing ordered, Wiley v. State, 635 So.2d 802 (Miss.1993) following writ of habeas corpus issued pursuant to Wiley v. Puckett, 969 F.2d 86, 105-106 (5th Cir.1992); resentencing affirmed.
Williams v. State, 445 So.2d 798 (Miss.1984). Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.
(Revised June 24, 2015.)

. This rule was adopted effective May 1, 1995.

. The motion for change of venue, itself, appears in the record, as does the affidavit of Christopher Tables. Cox's affidavit does not appear in the record.

. In Rideau, the population of Calcasieu Parish was approximately 150,000. Rideau, 373 U.S. at 724, 83 S.Ct. 1417.

. I also would hold, because this heinous crime occurred very near the intersection of three counties (Union, Lee, and Pontotoc), that the retrial should not take place in Lee or Pontotoc Counties.